lml

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,          )
                                   )
                    Plaintiff,     )
                                   )
          vs.                      )          Case No. 03-40053-01-JAR
                                   )
NORMAN A. PARADA,                  )
                                   )
                    Defendant.     )
_____   )

## MEMORANDUM ORDER AND OPINION

This matter is before the Court on a number of pretrial motions filed by the defendant, Norman A. Parada.[1]  A hearing was held August 21, 2006, at which time the Court made oral rulings on several of the motions and took the remainder under advisement.[2]  The Court has reviewed the parties' submissions and is prepared to rule.  For the reasons explained in detail below, defendant's motions are denied.

### Background

Defendant Norman Parada, along with co-defendants John McNeill, Kelly Ann Bradley and Tiffany Poulin, were charged in a two-count Indictment with possession with intent to distribute 100 grams or more of phencyclidine ("PCP") and conspiracy to distribute PCP.

---

[1]The government has also filed a Motion to Determine Defendant's True Identity (Doc. 187), which the Court will address in a separate order.

[2]At that hearing, defendant also withdrew several pro se motions that duplicated or corresponded with motions filed by defense counsel, to wit: Motion to Dismiss Indictment (Doc. 214); Motion to Strike (Doc. 217); Motion to Suppress (Doc. 218); Motion for Hearing (Doc. 219); Motion (Doc. 220); and Motion for Order Dismissing Evidence (Doc. 228).

Defendants Bradley and Poulin, pursuant to a plea agreement, pled guilty to other, and lesser, charges, and testified as government witnesses in the joint jury trial of defendants Parada and McNeill.

Prior to trial, Parada and McNeill each filed a motion to suppress, in which all defendants joined and which was denied by this Court after a hearing.[3]  The issues raised by defendants included, *inter alia*, standing, legitimacy of the initial stop, lawful detention, probable cause to search the van, destruction of evidence (PCP), and discovery related to the drug dog.[4]  Parada and McNeill were convicted on both counts of the Indictment.

Both appealed their convictions, which were consolidated for purposes of appeal.  The Tenth Circuit affirmed McNeill's conviction, but reversed Parada's conviction and vacated the sentence imposed.[5]  In so ruling, the Tenth Circuit determined that this Court erred in admitting evidence of Parada's 2000 California conviction, and remanded the case for a new trial.[6]  In view of its disposition of the appeal, the court declined to consider the other issues raised on appeal by Parada.[7]  In affirming McNeill's conviction, however, the court rejected his argument that this Court erred in denying his motion to suppress and in denying his motion for discovery of Rico, the drug detection dog's, training records.[8]

Since remand, this Court has held several pretrial hearings to address defendant's

_____

[3](Doc. 83.)

[4]*Id.*

[5]*United States v. McNeill*, 136 Fed. App'x 153, 158 (10th Cir. 2005).

[6]*Id.*

[7]*Id.*

[8]*Id.* at 157.

numerous filings, including the instant motions.  The Court has, *inter alia*, denied defendant's

motion to disqualify or reassign the trial judge, ruled on several discovery motions, considered

numerous pro se motions, and denied motions to dismiss for improprieties occurring in the

presentation of the case to the Grand Jury as well as for violations of the Speedy Trial Act.[9]  At

the April 24, 2006 hearing, defendant was permitted to renew all previous pretrial motions, to

wit: Motion to Suppress (Doc. 54); Motion for Discovery Related to Drug Detention Dog (Doc.

55); Motion to Dismiss Indictment for Destruction of Evidence (Doc. 56); Motion to Suppress

Evidence Seized from Cellular Phone (Doc. 57); Motion to Dismiss Indictment Based on Racial

Profiling (Doc. 58); and Memorandum in Support of Motion to Suppress (Doc. 69).  The Court

then overruled and denied these motions for the reasons previously stated in its Omnibus Order

Denying Defendants' Pretrial Motions (Doc. 83).  The Court now considers defendant's pending

motions relating to suppression issues.

*Discussion*

   A.      **Motion to Suppress or Dismiss for Failure to Provide Discovery**

      On March 8, 2006, defendant filed a motion for discovery that included a request for any

and all records for Rico, the drug dog used in the March 12, 2003, traffic stop, specifically

records of his job performance and his retirement from the force.  The government agreed to

produce the records, if they exist, and the Court granted defendant's motion at the April 24, 2006

motions hearing.  After several conferences with the government, defense counsel received

training records on Rico for the period from March 4, 2002 through March 18, 2003.  No

additional records had been received as of August 2, 2004, when defendant filed the instant

_____

[9](Docs. 201, 230.)

motion.  Defendant requests that the government be sanctioned for failing to provide complete records on Rico pursuant to Fed. R. Civ. P. 16(d)(2), which provides that "the court may order [the violating party] to permit discovery or inspection, grant a continuance, or prohibit the party from introducing evidence not disclosed, or it may enter such other order as it deems just under the circumstances," and that the PCP seized as a result of the alleged reliability of Rico be suppressed.  Defendant contends that he is entitled to Rico's records from March 2003 to September 2004, including actual use records.

The government responds that defendant's motion is frivolous.  On or about July 18, 2006, the government sent defense counsel 73 pages of discovery, entitled "Junction City Police Department K-9 Drug Training Report."  Each is a record of Rico's training and correspond to days that Rico was trained during March through December 2002, and January through March 2003.  The last report indicates that Rico was trained on March 18, 2003, six days after the date of the instant offense.  After that date, Rico was assigned to Officer Chad Raines.  On July 26, 2006, the government spoke with defense counsel, who renewed his long-standing request that he be supplied with a report of a record showing the reasons that Rico was retired from the force. The government advised that it had been looking for and would continue to look for the record. On August 4, 2006, DEA Agent Wurdeman faxed a copy of a letter dated September 17, 2004, from a veterinarian representing that Rico had hip dysplasia, the reason for Rico's retirement. The government contends that it has provided all of Rico's relevant training records to defendant, and that Rico's subsequent retirement has no bearing on his ability to sniff on March 12, 2003.

It is well-settled in the Tenth Circuit that a canine alert to the presence of drugs in a

4

lawfully detained vehicle alone will establish probable cause to search the interior of that

vehicle.[10]  As the court explained,

> [W]ith a canine, the reliability should come from the fact that the
> dog is trained and annually certified to perform a physical skill.
> When the annual certification process involves actual field testing
> and grading of the canine's drug-detection skills, the canine's
> reliability is sufficient for a probable cause determination absent
> some circumstance that justifies a more complete examination of
> the canine's skill and performance.[11]

Defendant cites in support of his argument the case of *United States v. Florez*,[12] where the

District Court of New Mexico held that the alerting dog's reliability was contingent on more

than the fact that the dog had been trained and certified.[13]  In *Florez*, the district court analogized

a dog alert to an informant's tip requiring the court to assess the informant's reliability and basis

of knowledge in light of the totality of the circumstances.[14]  In *Florez*, the court suppressed the

evidence because the dog handler's records regarding the dog's success rate were incomplete

and the dog handler's testimony on the dog's reliability was not sufficiently credible.[15]  Another

court in this district, Judge Crow, has disagreed with the court in *Florez*, however, concluding

that at most, the Tenth Circuit "recognizes that there may be circumstances that so undermine a

---

[10]*See, e.g.*, *United States v. Williams*, 403 F.3d 1203, 1207 (10th Cir. 2005); *United States v. Carter*, 64 Fed. App'x 109, 114 (10th Cir. 2003); *United States v. Ludwig*, 10 F.3d 1523, 1527-28 (10th Cir. 1993).

[11]*United States v. Kennedy*, 131 F.3d 1371, 1378 (10th Cir. 1997), *cert. denied*, 525 U.S. 863 (1998) (quoting *United States v. Wood*, 915 F. Supp. 1126, 1136 n.2 (D. Kan. 1996), *rev'd on other grounds*, 106 F.3d 942 (10th Cir. 1997)).

[12]871 F. Supp. 1411 (D.N.M. 1994).

[13]*Id*. at 1424.

[14]*Id*. at 1420.

[15]*Id*. at 1422-24.

particular dog's reliability as to affect the probable cause determination."[16]  These circumstances may include that the dog's training or certification was substandard, that the health of the dog affected reliability, or that the circumstances of the search raise issues regarding the dog's reliability.[17]  No such circumstances are present here.

The Court is satisfied that at the time of the search, Rico was adequately trained and certified and was in good health.  As the Court previously ruled after the suppression hearing before defendant's first trial, there is no evidence in this case that Rico had a poor accuracy record or was not properly trained.  In the instant motion, defendant does not challenge Rico's certification or his continual training before and up to the time of the traffic stop or Officer Oehm's training as Rico's handler.  Instead, defendant appears to challenge Rico's reliability subsequent to the sniff in March 2003, going so far as to allege that Rico was retired because he was somehow "defective" and unreliable.[18]  The Court is convinced that defendant is only entitled to records that show that Rico was trained and certified at the time of the stop at issue.  The question of Rico's reliability and health after the instant offense is irrelevant.  Because the government has provided defendant with all of Rico's relevant training records, as well as the reason for Rico's subsequent retirement, defendant's motion to suppress or dismiss is denied.

**Motion to Suppress or Dismiss for Failure to Preserve Alleged Marijuana**

The probable cause for the search of the vehicle was Rico's alert to the driver's side

---

[16]*Wood*, 915 F. Supp. 1126, 1135-36.  Other courts have also criticized *Florez.  See United States v. Allen*, 159 F.3d 832 (4th Cir. 1998); *Rivera v. State*, 545 S.E.2d 105 (Ga. App. 2001).

[17]*Wood*, 915 F. Supp. at 1136.

[18]At the April 24, 2006 hearing, counsel for defendant conceded that his source of information about Rico's alleged unreliability was defendant Parada, and that his discovery requests were intended to confirm or deny this information.

window.  Rico was not trained to detect or alert to PCP.  Office Oehm testified that the odor of marijuana was most likely the basis of the alert, given a small amount was found in the front passenger door map pocket.  The Court previously found that "[t]he dog's alert on odors emanating from the interior of the vehicle provided probable cause to search the entire interior of the van."  Officer Oehm testified that he found something in the map pocket of the door that he believed to be marijuana but didn't seize or preserve the substance.  Defendant now alleges that the marijuana played a central role in the prosecution's opposition to the motion to suppress the PCP.  Defendant asserts that he does not have any hope of suppressing the PCP absent the opportunity to have the alleged marijuana examined by his own experts, and that Officer Oehms' actions deprived defendant of his Fifth Amendment right to due process.  Defendant further submits that the actions of Officer Oehm were so highly irregular that they can be found to have been taken in bad faith.

The government counters that defendant, who was a passenger in the vehicle, does not have standing to seek to suppress the items seized from the van.  The issue of standing was previously addressed in the first trial, where the Court determined that defendant and the co-defendant passengers did not meet the "but for" test that requires each of them to show that the evidence would not have been discovered but for their own unlawful detention.[19]  The Court concluded that none of the defendants requested to leave the scene and, even if they had left, the van still would have been searched and the PCP would have been found.[20]  The defendant passengers had no reasonable expectation of privacy in a vehicle when they did not assert a

---

[19]*United States v. DeLuca*, 269 F.3d 1128, 1134 (10th Cir. 2001).

[20](Doc. 83 at 9.)

proprietary or possessory interest in either the vehicle or its contents.[21]  Such a defendant may

only challenge his detention, which the Court determined was legal.[22]

 The Tenth Circuit also addressed the standing issue in its decision in the case of co-

defendant McNeill.  In *United States v. McNeill*,[23] the court discussed whether McNeill, who was

also a passenger in the van, had standing to contest the search, and whether that search was

legal.[24]  The court explained,

> The government in its brief argues that the stop and search of the
> vehicle did not violate any of the van's occupants' Fourth
> Amendment rights, and that, in any event, McNeill, as a passenger
> who did not own the van, had "no standing" to challenge the
> search.  In this regard, it would appear that, under *United States v.*
> *DeLuca*, . . . McNeill did lack standing, but such is, in a sense,
> academic, since the district court found, and we agree, that as a
> matter of fact, there was no unlawful search or seizure.[25]

 Because the Tenth Circuit did not definitively rule on McNeill's standing, and because

the court declined to consider the issue in this defendant's appeal, the Court will again address

the issue as it applies to defendant.  In so ruling, the Court adopts and incorporates by reference

its previous ruling that defendant lacks standing to challenge the search of the van.  Defendant

now contends that the government's standing argument fails because defendant had a possessory

interest in the *cooler* in the van—the same cooler in which the PCP was found.  Defendant bases

this assertion on the trial testimony of co-defendant Bradley, who testified that defendant bought

---

[21]*Id.*

[22]*Id.* at 9-17.

[23]136 Fed. App'x 153 (10th Cir. 2005).

[24]*Id.* at 156.

[25]*Id.* (citation omitted).

the cooler that was taken on the trip.  This possessory interest in personal property, defendant argues, gives him standing to protest the search of the cooler and the seizure of the PCP.  Thus, the Court must determine whether defendant has standing to challenge the search of the cooler, despite his lack of standing to search the van itself.[26]

The Court answers this question by looking to general Fourth Amendment analysis set forth by the Tenth Circuit: "Because the standing issue remains invariably intertwined with substantive Fourth Amendment privacy rights analysis, logic dictates that we determine whether the challenged search or seizure violated the Fourth Amendment rights of the criminal defendant who seeks to exclude evidence."[27]  In deciding whether a search has infringed upon a defendant's constitutional rights, "we examine two primary factors: whether the defendant manifested a subjective expectation of privacy in the area searched and whether society would recognize that expectation as objectively reasonable."[28]  In *United States v. Martinez*,[29] the Tenth Circuit held that neither a non-owner driver nor a non-owner passenger had standing to challenge the police's search of the trunk of the car in which they were traveling.[30]  The court rejected the defendants' argument that the fact that their luggage was stored in the trunk of the car was sufficient to convey a reasonable expectation of privacy over the trunk itself.[31]  The court intimated, however, that the defendants might have had standing to challenge a search of the

---

[26]*See United States v. Edwards*, 242 F.3d 928, 936 (10th Cir. 2001).

[27]*Id*. (citations and quotations omitted).

[28]*Id*. (quotation omitted).

[29]983 F.2d 968 (10th Cir. 1992).

[30]*Id*. at 972-73.

[31]*Id*. at 973.

contents of the luggage stored in the trunk, but not over the trunk itself.[32]

In this case, defendant does not challenge the search of luggage, but a cooler designed to store food and beverages.  The cooler was not stored in the trunk of the vehicle, but was in the back section of the van.  The cooler was not being used to transport defendant's personal belongings while traveling, and contained only the two apple juice jugs of PCP seized by the police.  Moreover, defendant never asserted ownership over the cooler, either at the time of the stop or at the suppression hearing.  Instead, his ownership assertion is based on Kelley Bradley's testimony, a witness whose veracity defendant consistently disputed at trial.  Based on these facts, the Court cannot find that defendant clearly manifested a subjective expectation of privacy in the cooler and that his expectation was one that society has recognized as reasonable.  The Court therefore finds that defendant lacks standing to challenge the search of the cooler found in the van.

Assuming, *arguendo*, that defendant has standing, his motion to suppress would still fail.  In *California v. Trombetta,*[33] the Supreme Court held that a defendant's due process rights are violated by government destruction of evidence when (1) the evidence possesses an exculpatory significance that was "apparent before" its destruction; and (2) the defendant is unable to "obtain comparable evidence by other reasonably available means."[34]  In *Arizona v. Youngblood,*[35] the Court expanded these principles to potentially useful evidence destroyed in bad faith.[36]  But the

---

[32]*Id.*

[33]467 U.S. 479 (1984).

[34]*Id.* at 489.

[35]488 U.S. 51 (1988).

[36]*Id.*

government does not necessarily engage in bad faith conduct when the destruction of evidence results from a standard procedure employed by the government or agency regarding disposal of the evidence, at least where there is adequate documentation of the destroyed evidence.[37]

Defendant fails to establish a *Trombetta* violation because he does not show or allege that the marijuana had exculpatory value that was apparent before its destruction.  Even if the marijuana tested negative, suppression of the PCP would not be warranted because probable cause to search the vehicle was provided by the dog's alert without more.  Instead, a negative test would serve to eliminate the marijuana as a source of Rico's alert, leaving the possibility that Rico had alerted to a lingering odor, supported by testimony at trial that the passengers in the vehicle had been smoking marijuana on the trip.  Officer Oehm testified that Rico alerted, but did not indicate, on the driver's side window of the van, because he tried to jump through the open window and Officer Oehm pulled him back.  Based on Rico's alert, Officer Oehm concluded "that there was [an] odor of a drug that he's trained to detect present, and that it was basically coming from inside the vehicle somewhere due to him not pinpointing."  From this alert, Officer Oehm surmised that the odor "was coming from inside the vehicle."  Once Rico alerted, Officer Oehm searched the vehicle and found the apple juice jugs containing PCP in the back of the van.[38]

Nor does defendant establish a *Youngblood* violation because the marijuana had no evidentiary value and there is no evidence that Officer Oehm acted in bad faith.  After the van had been transported to the police warehouse, Officer Oehm found a small amount of alleged

---

[37]*United States v. Bohl*, 25 F.3d 904 (10th Cir. 1994).

[38]The Court notes that Officer Oehm was subjected to cross-examination by three defense counsel.

marijuana, consisting of a few flakes, stems or seeds, laying loose in the map pocket of the front passenger's door.  He did not collect the substance or field test it.  Contrary to defendant's accusations, there is no evidence that Officer Oehm believed that the marijuana was central to the case and there was nothing sinister about his failure to collect it.  Indeed, defendant's focus on the significance of the marijuana is misplaced, as the marijuana was irrelevant to the integrity of Rico's alert or the existence of probable cause to search the van.

Moreover, if, as in this case, there is probable cause to search a vehicle, the police are permitted to search any package within the vehicle that is capable of concealing the object of the search.[39]  In *Wyoming v. Houghton*,[40] the Supreme Court concluded that law enforcement officers can search a passenger's belongings inside a vehicle as long as they are capable of concealing the object of the search.[41]  The *Houghton* Court relied on *United States v. Ross*,[42] which held that when probable cause justifies the search of a vehicle, it justifies the search of every part of the vehicle including the contents that may conceal the object of the search.[43]  Noting that "[p]assengers, no less than drivers, possess a reduced expectation of privacy with regard to the property that they transport in cars," the *Houghton* Court declined to create an exception to the rule in *Ross* that required officers to determine the ownership of each container inside a car before allowing the search of that container, when there was probable cause to search the car and

---

[39]*See Wyoming v. Houghton*, 526 U.S. 295, 307 (1999); *United States v. Edwards*, 242 F.2d 928, 939 (10th Cir. 2001).

[40]526 U.S. 295 (1999).

[41]*Id.* at 307.

[42]456 U.S. 798 (1982).

[43]*Houghton*, 526 U.S. at 300-01.

the object of the search could be found in that container.[44]  In this case, probable cause to search

the van extended to the cooler because it could hold or conceal controlled substances, the object

of the search.  Defendant's motion to suppress is denied.

**B.    Motion to Reopen Evidentiary Hearing and Reconsider Motion to Suppress Evidence**

Defendant urges the Court to reopen the evidentiary hearing and reconsider its denial of

his motion to suppress.  Although the Tenth Circuit declined to address defendant's issues

concerning suppression, it rejected co-defendant McNeill's arguments, upholding his conviction.

Under the law of the case doctrine, findings made at one point during litigation become the law

of the case for subsequent stages of that same litigation.[45]  "A complementary theory, the

mandate rule, 'generally requires [district] court conformity with the articulated appellate

remand.'"[46]  "When further proceedings follow a general remand, the lower court is free to

decide anything not foreclosed by the mandate issued by the higher court."[47]  Thus,  defendant is

correct that the Court is not foreclosed from reconsidering its previous decision denying

defendant's motion to suppress; likewise, the Court is not foreclosed from declining to do so in

adopting its previous rulings that were not specifically addressed by the Tenth Circuit.

The decision to reopen a suppression hearing is within the sound discretion of the trial

court and is reviewed for abuse of discretion.[48]  Although defendant was granted a full and fair

---

[44]*Id*. at 303.

[45]*United States v. Webb*, 98 F.3d 585, 587 (10th Cir. 1996) (citation omitted).

[46]*Id*. (quoting *United States v. Moore*, 83 F.3d 1231, 1234 (10th Cir. 1996)).

[47]*Harrison v. Eddy Potash, Inc.*, 248 F.3d 1014, 1021(10th Cir. 2001) (quotation omitted).

[48]*United States v. Berrelleza*, 90 Fed. App'x 361 365-66 (10th Cir. 2004) (citing *United States v. Wiseman*, 172 F.3d 1196, 1207 (10th Cir. 1999)).

opportunity to litigate all of the issues involved with his previous motions, he now requests a fair opportunity to present the following evidence: Rico did not alert to the vehicle; Rico was not trained to detect PCP, and instead alerted to marijuana, which was not seized; and Rico was retired from the force because he was "defective" in that he was not reliable.  At the April pretrial motions hearing, the Court deferred ruling on defendant's motion to reopen and reconsider until a subsequent pretrial motions hearing.  The parties have briefed the issues and the Court conducted a hearing on August 21, 2006.  As set forth in detail above, none of the "new" suppression issues regarding Rico or the seizure of the marijuana have merit. Accordingly, defendant's motion is denied.

#### C.       Motion to Suppress Statements

Defendant moves for a hearing and order to suppress defendant's statements, admissions and refusals to respond during interrogations by Officer Oehm and DEA Agent Wurdeman.  At the August 21, 2006, hearing, the Court denied defendant's motion without prejudice, and directed defendant to file a motion specifically identifying the lack of statements and questions he deems illegal.  This motion should be filed at least seven days prior to trial, and can be heard at the limine conference.

**IT IS THEREFORE ORDERED BY THE COURT that:**

(1) defendant's Motion to Suppress or Dismiss for Failure to Provide Discovery (Doc. 254) is DENIED;

(2) defendant's Motion to Suppress or Dismiss for Failure to Preserve Alleged Marijuana (Doc. 255) is DENIED;

(3) defendant's Motion to Reopen Evidentiary Hearing and Reconsider Motion to

14

Suppress Evidence (Doc. 210) is DENIED; and

(4) defendant's Motion for Suppression of Statements (Doc. 253) is DENIED without prejudice, to be refiled within seven days of trial.

IT IS SO ORDERED.

Dated this  23rd  day of October 2006.

 S/ Julie A. Robinson
Julie A. Robinson
United States District Judge