# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,    )
       )
    **Plaintiff/Respondent**    )
       )    **Case No. 03-40053-01-JAR**
**v.**    )    **Case No. 11-4048-JAR**
       )
**NORMAN A. PARADA,**    )
       )
    **Defendant/Movant**    )
       )

## MEMORANDUM AND ORDER

This matter is before the Court on Petitioner Norman Parada's Motion under 28 U.S.C.

§ 2255 to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody (Doc. 386). In

his motion, Parada seeks relief on numerous grounds that he was denied effective assistance of

counsel. The Government has responded (Doc. 405) and Parada has filed a reply (Doc. 407).

After a careful review of the record and the arguments presented, the Court denies Parada's

motion without further evidentiary hearing.

## I.       Legal Standards

Under § 2255(a):

> A prisoner in custody under sentence of a court established by Act
> of Congress claiming the right to be released upon the ground that
> the sentence was imposed in violation of the Constitution or laws
> of the United States, or that the court was without jurisdiction to
> impose such sentence, or that the sentence was in excess of the
> maximum authorized by law, or is otherwise subject to collateral
> attack, may move the court which imposed the sentence to vacate,
> set aside or correct the sentence.

According to Rule 4(b) of the Rules Governing Section 2255 Proceedings for the United States District Courts:

> The judge who receives the motion must promptly examine it. If it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion. . . .

An evidentiary hearing must be held on a § 2255 motion "unless the motion and files and records of the case conclusively show that the prisoner is entitled to no relief."[1] Petitioner must allege facts which, if proven, would warrant relief from his conviction or sentence.[2] An evidentiary hearing is not necessary where the factual allegations in a § 2255 motion are contradicted by the record, inherently incredible, or when they are conclusions rather than statements of fact.[3]

A district court may grant relief under § 2255 if it determines "that the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack."[4] "Review under § 2255 is not an alternative to appellate review for claims that could have been presented on direct appeal but were not."[5] A movant may overcome this procedural bar by

---

[1] 28 U.S.C. § 2255(b).

[2] *See Hatch v. Oklahoma*, 58 F.3d 1447, 1471 (10th Cir. 1995), *cert. denied*, 517 U.S. 1235 (1996).

[3] *Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999) (quoting *Engelen v. United States*, 68 F.3d 238, 240 (8th Cir. 1995)); *see also Hatch*, 58 F.3d at 1471 ("the allegations must be specific and particularized, not general or conclusory"); *United States v. Fisher*, 38 F.3d 1144, 1147 (10th Cir. 1994) (rejecting ineffective assistance of counsel claims which are merely conclusory in nature and without supporting factual averments).

[4] 28 U.S.C. § 2255.

[5] *United States v. Magleby*, 420 F.3d 1136, 1139 (10th Cir. 2005), *cert. denied*, 547 U.S. 1097 (2006).

showing either of "two well recognized exceptions."[6]  First, the movant must show good cause

for not raising the issue earlier and actual prejudice to the movant's defense if the issue is not

considered.[7]  Cause may "be established by showing that counsel rendered constitutionally

ineffective assistance."[8]  Second, the "failure to consider the federal claims will result in a

fundamental miscarriage of justice."[9]

The Sixth Amendment guarantees that "[i]n all criminal prosecutions, the accused shall

enjoy the right . . . to have the Assistance of Counsel for his defence."[10]  A successful claim of

ineffective assistance of counsel must meet the two-pronged test set forth in *Strickland v.

Washington*.[11]  First, a defendant must show that his counsel's performance was deficient in that

it "fell below an objective standard of reasonableness."[12]  To meet this first prong, a defendant

must demonstrate that the omissions of his counsel fell "outside the wide range of professionally

competent assistance."[13]  This standard is "highly demanding."[14]  Strategic or tactical decisions

on the part of counsel are presumed correct, unless they were "completely unreasonable, not

---

[6]*United States v. Cervini,* 379 F.3d 987, 990 (10th Cir. 2004), *cert. denied,* 544 U.S. 904 (2005).

[7]*Id*.

[8]*United States v. Wiseman,* 297 F.3d 975, 979 (10th Cir. 2002) (citations omitted).

[9]*Cervini,* 379 F.3d at 990 (quoting *Coleman v. Thompson,* 501 U.S. 722, 750 (1991)); *see Bousley v. United States,* 523 U.S. 614, 621–22 (1998) (holding that a showing of actual innocence meets the fundamental miscarriage of justice prong).

[10]U.S. Const. amend. VI; *Kansas v. Ventris*, 556 U.S. 586 (2009).

[11]466 U.S. 668 (1984).

[12]*Id*. at 688.

[13]*Id*. at 690.

[14]*Kimmelman v. Morrison*, 477 U.S. 365, 382 (1986).

merely wrong, so that [they] bear no relationship to a possible defense strategy."[15]  In all events, judicial scrutiny of the adequacy of attorney performance must be strongly deferential: "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."[16]  Moreover, the reasonableness of the challenged conduct must be evaluated from counsel's perspective at the time of the alleged error; "every effort should be made to 'eliminate the distorting effects of hindsight.'"[17]

Second, a defendant must also show that his counsel's deficient performance actually prejudiced his defense.[18]  To prevail on this prong, a defendant "must show there is a reasonable probability that, but for his counsel's unprofessional errors, the result of the proceeding would have been different."[19]  A "reasonable probability" is a "probability sufficient to undermine confidence in the outcome."[20]  This, in turn, requires the court to focus on "the question whether counsel's deficient performance render[ed] the result of the trial unreliable or the proceeding fundamentally unfair."[21]  A defendant must demonstrate both *Strickland* prongs to establish a claim of ineffective assistance of counsel, and a failure to prove either one is dispositive.[22]

---

[15]*Fox v.Ward*, 200 F.3d 1286, 1296 (10th Cir. 2000) (quotation and citations omitted).

[16]*Strickland*, 466 U.S. at 689.

[17]*Edens v. Hannigan*, 87 F.3d 1109, 1114 (10th Cir. 1996) (quoting *Strickland*, 466 U.S. at 689).

[18]*Strickland*, 466 U.S. at 687.

[19]*Id*. at 694.

[20]*Id*.

[21]*Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993).

[22]*Smith v. Robbins*, 528 U.S. 259, 286 n.14 (2000) (quoting *Strickland*, 466 U.S. at 697) ("The performance component need not be addressed first. 'If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.'"); *see also Romano v.*

Finally, Parada appears *pro se*.  Therefore, his pleadings are to be construed liberally and not to the standard applied to an attorney's pleadings.[23]   If a petitioner's motion can be reasonably read to state a valid claim on which he could prevail, the court should do so despite a failure to cite proper legal authority or follow normal pleading requirements.[24]   However, it is not "the proper function of the district court to assume the role of advocate for the *pro se* litigant."[25] For that reason, the court shall not supply additional factual allegations to round out a petitioner's claims or construct a legal theory on his behalf.[26]

## II.     Procedural Background

On March 12, 2003, Officer Jim Oehm, with the Junction City Police Department, arrested Parada after finding PCP in a vehicle in which he was riding as a passenger on Interstate 70.  On May 21, 2003, Parada was indicted on two drug charges: possession with intent to distribute 100 grams or more of PCP (Count 1); and conspiracy to distribute the same (Count 2).[27]   Parada was convicted by a jury on both charges on November 26, 2003, and he was sentenced to 405 months' imprisonment on March 26, 2004.[28]   Parada appealed his conviction to the Tenth Circuit Court of Appeals, and that court vacated his conviction and reversed his

---

*Gibson*, 239 F.3d 1156, 1181 (10th Cir. 2001) ("This court can affirm the denial of habeas relief on whichever *Strickland* prong is the easier to resolve.").

[23]*Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

[24]*Id*.

[25]*Id*.

[26]*See Whitney v. New Mexico*, 113 F.3d 1170, 1173–74 (10th Cir. 1997).

[27]Doc. 1.

[28]Doc. 138.

sentence for an evidentiary error in an opinion released June 17, 2005.[29]  The mandate was issued October 11, 2005.[30]

On November 26, 2006, a jury convicted Parada on both charges after a second trial.[31] On July 30, 2007, this Court sentenced Parada to concurrent sentences of 405 months' custody on each count.[32]

Parada directly appealed his second conviction to the Tenth Circuit, which affirmed his conviction on August 29, 2009.[33]  Parada filed a petition for writ of certiorari with the United States Supreme Court, which was denied on May 24, 2010.[34]

Parada timely filed this § 2255 motion on May 12, 2011.[35]

## III.    Facts of the Case and Trial Proceedings

### *Vehicle Stop*

The Government presented the following evidence at the August 23, 2003 motions hearing.  On March 12, 2003, Officer Oehm stopped a silver Ford van bearing Maryland tags on

---

[29]*See United States v. McNeill*, 136 F. App'x 153 (10th Cir. June 17, 2005) (unpublished).

[30]Doc. 171.

[31]Doc. 309.

[32]Doc. 347.

[33]*See United States v. Parada*, 577 F.3d 1275 (10th Cir. 2009).

[34]Docs. 371, 372.

[35]Doc. 386.  Section 2255 motions have a one-year limitations period from the date the judgment of conviction becomes final. 28 U.S.C. § 2255(f)(1).

Interstate 70 approximately ten miles outside of Junction City, Kansas.[36]  Oehm stopped the van because he observed it cross the right line of the lane at least twice, then drive on the white line in the center of the highway, in violation of K.S.A. § 8-1522.[37]

After stopping the van, Oehm approached it and made contact with the driver, Kelly Bradley.[38]  Oehm observed John McNeill in the passenger seat, and Tiffany Poulin and Parada lying down in the back seat.[39]  He also noticed the "strong odor" of air fresheners coming from the left rear window of the van, which was open, as well as an air freshener hanging from the left rear window and two others in the vehicle.[40]

Upon making contact with Bradley at the driver's door, Oehm asked her for her driver's license and insurance.[41]  Bradley produced a Virginia license and a rental agreement for the van.[42]  Oehm noticed that Bradley was "visibly shaken," as evidenced by her rapid breathing, the panicked look on her face, and her trembling hands.[43]  Oehm asked Bradely about her travel plans, and she advised that they were coming from Colorado and going home to Virginia.[44]

---

[36]Doc. 152, Hrg. Tr. at 14–15, 23, 71.

[37]*Id*. at 16–17.

[38]*Id*. at 23, 25.

[39]*Id*. at 25–26.

[40]*Id*. at 23–24.

[41]*Id*. at 27.

[42]*Id*. at 27–28.

[43]*Id*. at 26–27.

[44]*Id*. at 27.

Officer Oehm took the documents to his patrol car and ran the information through dispatch.[45] He determined from the apparently expired rental agreement that the van was not rented to Bradley or any other occupants, but to "Saketha Champion."[46] The rental agreement showed no authorized additional drivers, although the name "Kelly Ann Bradley" had been penned over printed language on the agreement indicating that no drivers other than the renter was permitted.[47] The rental agreement further stated that the van was not to be driven out of the state of rental, which was Maryland, with the exception of "MD, DC, VA, NC, SC."[48]

After running the dispatch checks, Oehm re-approached the van, returned Bradley's license and rental agreement to her, and handed her a warning ticket for the lane violation.[49] Oehm then stepped away from the van and asked Bradley whether he could ask her a few questions; she replied "sure," or something similar.[50] He then asked her why she had gone to Colorado, and Bradley stated they were coming back from a wedding.[51] He also asked her why she was traveling I-70 back from Colorado to Virginia, when I-80 would have been a more direct route, and Bradley replied that this was the only route that she knew.[52] Oehm asked her if they were transporting anything illegal from Colorado; after looking over at McNeill, Bradley replied

---

[45]*Id*.

[46]*Id*. at 30.

[47]*Id*.

[48]*Id*. at 31.

[49]*Id*. at 31–32.

[50]*Id*. at 32–33.

[51]*Id*. at 33.

[52]*Id*.

"no," or something similar.[53]  Oehm then asked Bradley if she would have a problem if he

checked to make sure, and she replied, "Check what?"[54]  Oehm told her he wanted to check the

van for weapons or contraband, and Bradley asked, "Why?"[55]

Without responding further, Oehm told Bradley in a conversational voice that he was

going to grab his drug dog and be right back.[56]  Oehm's drug dog, Rico, was in his patrol

vehicle.[57]  By this point, Lieutenant Jimerson of the Kansas Highway Patrol had arrived on the

scene.[58]  Ohem walked Rico around the van in a counter-clockwise motion, and Rico gave a

positive alert for the presence of illegal drugs while near the area of the driver's window.[59]

Oehm then put Rico back in his patrol car, returned to the van, and told the occupants that they

were going to have to step out.[60]

While all of the vehicle occupants were standing on the side of the road, Oehm searched

the van.[61]  During his search, he located a large cooler in the rear of the van; inside the cooler, he

observed two half-gallon sized Tree Top brand apple juice jugs that contained a fluid resembling

---

[53]*Id.*

[54]*Id.* at 33–34.

[55]*Id.* at 34.

[56]*Id.*

[57]*Id.* at 36.

[58]*Id.* at 35.

[59]*Id.* at 36, 42.

[60]*Id.* at 44.

[61]*Id.*

apple juice.[62]  Oehm opened the jugs and detected a strong chemical odor.[63]  He suspected the bottles contained PCP, but when he asked the van's occupants what was in the jugs, no one replied.[64]

Oehm placed the jugs in Lt. Jimerson's vehicle for transport and asked Bradley and the other occupants to follow him to the Junction City Police Department warehouse, where he continued the search.[65]  All four van occupants were arrested at this time.[66]  A small amount of marijuana was found in a map pocket of the front passenger door during the search of the warehouse.[67]  DEA agents arrived on the scene, processed the contents of the containers, took samples, and performed field tests on the substances, obtaining a positive result for PCP on the liquid substances in the apple juice jugs.[68]

### Trial

The second trial was held in November 2006.[69]  The government's main witness was Kelly Bradley, who testified that about one week prior to the trip, her cousin told her that Parada

---

[62]*Id*. at 45.

[63]*Id*.

[64]*Id*. at 45–46.

[65]*Id*. at 53–54.

[66]*Id*. at 61.

[67]*Id*. at 46.

[68]*Id*. at 91–92, 127–28.

[69]Trial Tr. Docs. 314, 315.

wanted to go to Los Angeles and needed a driver.[70]  Bradley spoke to Parada, who said he needed

a licensed driver for the trip because he did not have a license.[71]  He said he would give her $200

to pay for daycare for her children.[72]  Parada had a friend, Saketha Champion, rent a vehicle for

the trip on March 6, 2003, and added Bradley to the rental contract on March 7.[73]  Parada and

Champion picked up Bradley and took her to Enterprise, where her name was added to the

contract.[74]

Afterwards, Bradley and Parada dropped off Champion and picked up McNeill.[75]  They

all went to Wal-Mart, where Parada purchased a gray and white cooler.[76]  Parada, Bradley,

McNeill, Poulin and "Fly" then left the Washington D.C. area the night of March 7, 2003, in the

rented vehicle, and they were transporting the cooler Parada had purchased.[77]  Fly was a friend of

Parada's whom Bradley had met that date.[78]  The trip to Los Angeles took two days, with Bradley

and McNeill sharing driving responsibilities.[79]  They drove straight through, stopping only in rest

---

[70]Trial Tr. at 199–201.

[71]Id. at 202.

[72]Id.

[73]Id. at 202–05.

[74]Id. at 205–06.

[75]Id. at 206–07.

[76]Id. at 207.

[77]Id. at 208–09.

[78]Id. at 210.

[79]Id. at 212.

areas.[80]

They arrived in Los Angeles early in the morning on March 10.[81]  In Los Angeles, Parada "ended up driving because he knew where he was going," and he knew where the hotel was.[82] They checked into a Days Inn motel, which Bradley rented under her name because she was the only one with identification, and Fly paid for the room.[83]  At some point, a sixth individual came to the room, and when he arrived, Parada and Fly asked Bradley and Poulin to go upstairs.[84]  The sixth individual was there for 30-45 minutes and left.[85]  Prior to this individual coming to the hotel, Parada told Bradley "that he was having a cousin come over," and that he and Fly needed to talk to him and to go upstairs when he came over.[86]

After the individual left, Bradley, McNeill, and Parada left the hotel room to go get food.[87]  They ate their food in the room, and while Bradley was cleaning up, she looked under the kitchen counter and saw two apple juice bottles full of PCP.[88]  Bradley looked at Parada, who told her "don't worry about it.  It's not mine.  I don't have nothing to do with it."[89]  Parada

---

[80]*Id*. at 214.

[81]*Id*. at 217, 222–23.

[82]*Id*. at 260.

[83]*Id*. at 223.

[84]*Id*. at 225–26.

[85]*Id*. at 228–29.

[86]*Id*. at 295–96.

[87]*Id*. at 230.

[88]*Id*. at 230–31.

[89]*Id*. at 232.

insisted, "Don't worry about it. We're gonna—it has nothing to do with you," and that Fly was going to take it.[90]

They left Los Angeles the next day, March 11, to return to Washington D.C.[91] Parada and Fly packed the van.[92] Bradley testified that she did not put the PCP in the van and did not see who did.[93] McNeill drove from Los Angeles to Kansas, where Bradley took over driving.[94] They were pulled over by Officer Oehm on March 12, while traveling on Interstate 70 near Junction City, Kansas.[95] Oehm searched the van and found the PCP in the cooler.[96] Oehm then asked Bradley and the others to follow him to the Junction City police warehouse.[97] On the way there, Parada called Fly on a cell phone and told him what was going on.[98] Fly said that it would be best if someone stood up and took the case instead of everyone "going down" on the charges.[99] Parada got off the phone, told the others what Fly had said, and "eventually he had talked Tiffany Poulin into taking—she was supposed to stand up and say it was hers and take the

---

[90]*Id*. at 233.

[91]*Id*. at 233–34, 239.

[92]*Id*.

[93]*Id*. at 238.

[94]*Id*. at 241–42.

[95]*Id*. at 242–45.

[96]*Id*. at 245.

[97]*Id*. at 245–46.

[98]*Id*. at 246.

[99]*Id*.

case."[100]

Bradley testified that Parada

> [t]old us to say that we were coming from a wedding in Colorado, and to say that Mr. McNeill was my boyfriend because him and Tiffany were already boyfriend and girlfriend. To say that I was McNeill's girlfriend to make it look like we were coupled up and coming from like in the van. And he told us to say that we were coming from Colorado because he didn't want to say we were coming from LA because he didn't want—the more states we crossed with the PCP, that would be more time that we would end up getting. . . .

> He just said to say it was a friend of ours' wedding, and it was somewhere—I think we were supposed to say it was in Camp Springs [sic], Colorado, somewhere. Colorado Springs, Colorado, or something.[101]

Poulin said she was going to "take it."[102] Parada told Poulin, "'[j]ust stick to the same story. Say it's yours because we'll get you out. We'll get you out. It would be easier for us to have one person locked up and get you out than have all of us locked up and all of us try to get out of jail.'"[103]

While incarcerated in the Geary County Jail, Bradley received a letter from Parada, which was introduced as Government Exhibit 13.[104] Bradley testified that Parada wrote the letter,

---

[100]*Id.*

[101]*Id.* at 247.

[102]*Id.* at 248–49.

[103]*Id.* at 249.

[104]*Id.* at 262; Gov't Ex. 13.

14

which was signed, "Love, Face."[105]  In the letter, Parada told Bradley to "Call Kiki," who was

Saketha Champion; to "stay quiet"; and to "stay to the same story."[106]

The Government also introduced other letters authored by Parada, specifically

Government Exhibits 14 and 15, both of which were letters that the Government argued were

authored by Parada and sent to Poulin.[107]  These letters were authenticated by reference to their

contents and substance, in conjunction with the circumstances of the case under Fed. R. Evid.

901(b)(4).[108]

In Government Exhibit 14, Parada made incriminating and inculpating representations,

such as, "[a]nd you know the only reason I was dealing with her so she can get that, thing move

for us, you know what.  I lost a half of mill fucking with that dumb bitch.  But fuck it, I take it as

a lost."[109]  The Government argued that Parada was referring to Bradley.  In the same letter,

Parada acknowledged his connection to the drugs in the van:

> All this people in this . . . town wanna do is just hold us so they can
> make some money off of us.  But guess what they are down to
> there [sic] last leg and soon they will let us go home.  And you
> know what they never seen that type of drugs found, plus niggas
> made history in this town. [T]hey also mad because they never seen
> a young nigga push that much weight. They took a half of mill, but
> guess what fuckem.  In the long run a nigga will make ten times

---

[105]*Id*. at 263.

[106]*Id*. at 265–66.

[107]*Id*. at 390–400; 407-08; Gov't Exs. 14, 15.

[108]*Id*. at 397–98.

[109]Gov't Ex. 14, at 1.

more.[110]

In Government Exhibit 15, Parada also acknowledged his financial interest in the drugs:

> I feel bad because I put you in this mess we are in, but at the same time I feel like me Bonny and you Clyde. You know I lost a lot of money with this bullshit that happen, but when we hit the streets we are going to take over shit. But this money thing aint [sic] a problem, because what a nigga lost I will get that shit back 3 or 4 times more.[111]

Tiffany Poulin was also called as a Government witness. She recanted her testimony given at the first trial that inculpated Parada in the conspiracy, identifying him as the organizer of the trip to California to obtain the PCP. In the second trial, Poulin testified that she made up her testimony in the first trial, and that her testimony in the second trial was "the truth."[112]

A DEA chemist, Andrea Michiels, testified that the liquid substance in both apple juice jugs contained 340.7 grams of PCP.[113] DEA Agent Craig Wurdeman testified that the PCP found in the back of the van had a street value of approximately $378,000.00.[114] The amount of PCP recovered from the van, 3,786 milliliters of PCP liquid, could have produced 37,860 PCP-dipped cigarettes for resale.[115]

## IV. Discussion

---

[110]*Id*. at 3.

[111]Gov't Ex. 15, at 2.

[112]Trial Tr. at 337, 341–42.

[113]*Id*. at 196.

[114]*Id*. at 115, 117–18.

[115]*Id*. at 118.

Parada cites twenty-five grounds of ineffective assistance of counsel based on counsel's failure to raise multiple issue and arguments. He has grouped his claims into four categories of alleged error, at every stage of his proceedings: A) pre-trial; B) prosecutorial misconduct; C) trial and appeal; and D) sentencing and appeal.

## A.     Pre-trial errors

### 1.     Officer Oehm's Affidavit

Parada argues that counsel failed to argue that he was unlawfully arrested because Officer Oehm's "affidavit was not administer[ed] to proper authorit[ies], or to the judicial counsel," but by a state notary public, who "was not authorized to administer oaths in Federal Criminal Proceedings," and "[a]n arrest under authority of a Federal court upon affidavit verified before a notary public of a state" violates the Fourth Amendment. This argument is premised on the misconception that Parada's arrest "under authority of a Federal Court" was based on Oehm's affidavit. Parada's arrest in federal court was based on the Indictment issued by the Topeka Grand Jury on May 21, 2003, and this Court issued a warrant for his arrest on that date.[116] Accordingly, counsel did not perform deficiently by failing to raise this claim because no legal or factual basis existed to do so, and his performance did not prejudice Parada.[117]

### 2 and 3.     Complaint/Grand Jury Information

Parada argues that counsel was ineffective for failing to argue that Kelly Bradley provided false post-arrest statements to law enforcement officers, which were later used by the

---

[116]Doc. 2. Moreover, Oehm's six page, sworn Affidavit/Narrative was made under oath. Doc. 407, Ex. 3.

[117]*See Sperry v. McKune*, 445 F.3d 1268, 1275 (10th Cir. 2006) (explaining that failure to raise a meritless claim is not ineffective assistance of counsel).

Government to obtain the Indictment in this case. In a separate related claim, he also argues that counsel failed to raise the issue that these false post-arrest statements were provided to the Grand Jury by the DEA case agent.

Parada contends that Bradley had a "strong motive to lie," and no independent investigation to link Parada to the PCP was conducted. In its response, the Government recognizes that Bradley made false and inconsistent statements to the DEA case agent, including her false story about traveling from a friend's wedding in Colorado, that she was McNeill's girlfriend and that she did not know about the PCP.[118]

Nevertheless, even if any defects occurred in the grand jury process, they did not prejudice Parada under *Strickland's* prejudice prong because there is no reasonable probability that they affected the outcome of the trial. At trial, Bradley testified about Parada's involvement in the offenses, and the jury believed her, convicting him beyond a reasonable doubt. As discussed *infra*, both the Government and defense counsel interrogated Bradley about her prior false and inconsistent statements.[119] Thus, neither Bradley's post-arrest statements nor the agent's reference to those statements in the grand jury proceedings had any effect on the outcome of the trial.[120] Parada's claims are denied.

---

[118]Doc. 405 at 43.

[119]*See* section C.5, *infra*, at 32-33.

[120]*See United States v. Cleaver*, 236 F. App'x 359, 360–61 (10th Cir. 2007) (rejecting petitioner's § 2255 claim that his counsel ineffectively failed to raise claim that the prosecutor knowingly presented perjured testimony from law enforcement agents in order to indict petitioner, on the basis that the alleged misconduct did not affect fundamental fairness of the grand jury proceedings, and the "claim was thus mooted by his conviction at trial"); *United States v. Mechanik*, 475 U.S. 66, 70–73 (1986) (holding errors that may affect grand jury's decision to indict are not grounds for reversal where defendant has been found guilty beyond a reasonable doubt by a petit jury); *United States v. Wiseman*, 172 F.3d 1196, 1205–06 (10th Cir. 1999) ("Measured by the petit jury's [guilty] verdict, . . . any error in the grand jury proceeding connected with the charging decision was harmless beyond a reasonable

### 4.    Failure to comply with 18 U.S.C. § 3161(b)

Parada contends that his counsel ineffectively failed to move to dismiss the Indictment on the basis that the Government failed to comply with 18 U.S.C. § 3161(b), which requires that an "indictment charging an individual with the commission of an offense shall be filed within thirty days from the date on which such individual was arrested."  Parada argues that because DEA agents assisted with the investigation after his arrest by state authorities, he was effectively in federal custody on March 12, 2003, and the Indictment was not filed until May 21, 2003.

Parada's argument is without merit.  The Tenth Circuit has held that "a person is not 'arrested in connection with' a charge, within the meaning of section 3161(b) . . . unless there is some coincidence of (1) a pending federal complaint and (2) federal custody based on that complaint."[121]  Accordingly, the Court agrees with the Government that § 3161(b) was not triggered by Parada's arrest by state authorities, but when the Indictment was issued by the grand jury on May 21, 2003, and the Court issued a warrant for his arrest on federal charges.[122] Following the issuance of the Indictment, Parada was arraigned by a magistrate of this Court the next day.  Accordingly, because no legal basis existed to challenge the Indictment under § 3161(b), Parada's counsel did not ineffectively perform in failing to raise this claim, and his performance did not prejudice Parada.

---

doubt.") (quotations omitted).

[121]*United States v. Bagster*, 915 F.2d 607, 611 (10th Cir. 1990).

[122]*Id.*; *see also United States v. Mills*, 964 F.2d 1186, 1189–90 (D.C. Cir. 1992) (under § 3161(b), it is the "undisputed rule that a state arrest does not trigger the Speedy Trial Act's clock, even if the arrest is for conduct that is the basis of a subsequent indictment for a federal offense") (quoted with approval in *United States v. Allen*, 986 F.2d 1354, 1356 (10th Cir. 1993)).

### 5.    Speedy Trial

Parada argues that his counsel "neglected to raise that his client ['s] speedy trial clock was violated" on the basis that his case was remanded back to this Court after his first direct appeal and his trial "started a year and one month later."  This argument is without merit. Counsel for Parada did raise this issue, in a Motion to Dismiss the Indictment with Prejudice for Violation of the Speedy Trial Act filed March 8, 2006.[123]  The Government filed a response, and this Court denied Parada's motion at the April 24, 2006 motions hearing.[124]  Parada does not allege that this Court denied the motion in error, and thus posits no legal or factual basis upon which counsel could have based a direct appeal of this issue.  Accordingly, Parada's claim fails under both *Strickland's* performance and prejudice prongs.[125]

### 6.    "Abuse of Discretion"

Parada alleges that his counsel was ineffective because he neglected to argue that this Court abused its discretion with respect to six issues: (1) denying Parada's motion to present expert testimony relating to the reliability of Officer Oehm's drug dog; (2) in admitting Government Exhibits 14 and 15 (letters from Parada to Poulin), this Court "made no open court record or took the proper measures to weigh the probative and prejudice value"; (3) Parada was not present during all of the matters relating to his case, specifically the read-back of testimony in

---

[123]Doc. 207.

[124]Doc. 357 at 52–54.

[125]Moreover, because Parada alleges statutory violations of his right to a speedy trial, as opposed to a constitutional violation, his claim is not cognizable in the instant § 2255 context.  *See United States v. Taylor*, 454 F.3d 1075, 1078–79 (10th Cir. 2006) (dismissing defendant's claims alleging a violation of a statutory right to a speedy trial in § 2255 context, noting that a statutory right, as opposed to a constitutional right, will not support issuance of a certificate of appealability).

the jury deliberation room and the juror's note-taking of such testimony; (4) the jury alternates were in the deliberation room with the rest of the jury; (5) the Court did not recuse itself from this matter; and (6) the Court refused to strike Poulin's comment about the drug dog being walked around the van from the record during the trial.

The Court agrees with the Government that Parada has not carried his burden under *Strickland's* prejudice prong to show how each of these assignments of error affected the outcome of his trial. Parada does not even attempt to establish the requisite reasonable probability that the result or outcome of the proceeding would have been different had his counsel raised each of these issues, either before this Court or on direct appeal.[126]

Moreover, Parada's claims of error are unfounded or simply incorrect. First, counsel vigorously raised the issue of whether Parada could present expert testimony relating to the reliability of Officer Oehm's drug dog, both before this Court and on appeal. Contrary to his assertions, Parada's motion to present his own expert was never approved by the Court; instead, counsel filed a Notice of Intent to Offer Testimony[127] of Dr. Dan J. Craig regarding the methods, means, and procedures of animal training, including but not limited to drug detection and attack dogs. After a hearing, the Court granted the Government's Motion *in Limine* to exclude this evidence,[128] on the grounds that this testimony was irrelevant at trial as it related only to Fourth

---

[126]*See Byrd v. Workman*, 645 F.3d 1159, 1168–69 (10th Cir. 2011); *United States v. Challoner*, 583 F.3d 745, 749 (10th Cir. 2009).

[127]Doc. 280.

[128]Doc. 281.

Amendment suppression issues.[129]  The Court noted that Dr. Craig's affidavit was part of the record, having been offered at the suppression hearing, and limited the Government's evidence to Oehm's testimony that he stopped the car, ran the dog around the car, the dog indicated, and he initiated the search.[130]  Counsel raised several issues regarding the dog sniff on direct appeal, including a challenge to Oehm's credibility, but the Tenth Circuit was not persuaded that the Court's findings were clearly erroneous.[131]

Nor does Parada's claim with respect to Government Exhibits 14 and 15 have merit. Parada contends that at the *in limine* hearing before trial, the Court failed to make a record on the motion to exclude the letters he wrote to Poulin on the basis that they were prejudicial.  The record is clear, however, that counsel objected to admission of the letters on grounds of prejudice.[132]  At the *in limine* hearing, the Court noted that the letters had been admitted in the first trial, and took the issue under advisement after suggesting the parties attempt to redact the objectionable words and phrases; the Court would then rule on the admissibility at the time the Government offered the letters into evidence at trial.[133]  Exhibits 14 and 15 were admitted at trial, over defense counsel's objections.[134]  Thus, Parada's claim that counsel was ineffective for failing to object to the Court's supposed failure to make a record on his evidentiary objections to

---

[129]Doc. 359, *In Limine* Hrg. Tr. at 19-21.

[130]*Id.*

[131]*Parada*, 577 F.3d 1275, 1281–83 (10th Cir. 2009).

[132]Doc. 285.

[133]Tr. *In Limine* Hrg., 11/9/06, Doc. 359 at 42–44.

[134]Trial Tr. at 396–400, 402–08.

these exhibits is unfounded.

Next, Parada argues that counsel was ineffective because he failed to object to the read-back of testimony by the court reporter inside the deliberation room, that no jury instruction was given in open court regarding note taking by the jury, and the alternate jurors were in the deliberation room with the jury during deliberations. Parada's claims are without merit. After the jury requested a read back of both Officer Oehm and Agent Wurdeman's testimony at trial, both Parada's counsel and the Government agreed that the court reporter could do so in the deliberation room, on the condition that she read the testimony in its entirety and the jurors were not allowed to ask her any questions.[135] Likewise, after the jury asked if they could take notes during the read back, the Court sent in its standard instruction on note taking, which the parties also agreed upon, both in principal and form.[136] Finally, Parada is simply mistaken that the alternate jurors were in the deliberation room with the rest of the jurors. The two alternates were dismissed by the Court after the jury was instructed and before deliberations began, with instructions that they may be recalled should one of the deliberating jurors become unable to do so. Although the alternates exited the courtroom with the jury to the deliberation room, it was only to retrieve their belongings, and not to deliberate.

Parada argues that this Court erred by not granting his motion to recuse from hearing this case. It appears from Parada's argument, however, that he is referring to his motion seeking the Court's recusal from hearing his § 2255 motion.[137] The Court denied that motion, and the Tenth

---

[135]Doc. 308.

[136]*Id.*

[137]Doc. 373.

Circuit affirmed Parada's direct appeal of that issue.[138]  Moreover, the Court held a hearing to

consider and denied Parada's *pro se* motion seeking recusal prior to the second trial,[139] as

supplemented by defense counsel.[140]

Finally, Parada claims that counsel erred by failing to argue that the Court should have

stricken Poulin's testimony at trial about the drug dog being walked around the mini van.  Parada

does not offer any argument in support of this claim, and it is denied.

### B.        Prosecutorial Misconduct

Parada contends that his counsel was ineffective because he failed to raise the issue of

prosecutorial misconduct in his case.  He contends that the prosecutor presented Poulin's

perjured testimony to the jury; presented "the incriminating post-arrest fabricated letter"

putatively authored by Parada through Poulin at the jury trial; violated the Court's ruling *in*

*limine* to redact certain words from the post-arrest letters before admitting the letters into

evidence; used impeachment evidence in the guise of substantial evidence, and presented the

impeachment evidence to the Tenth Circuit on appeal in his reply brief; and did not correct or

move to strike Poulin's testimony about the drug dog being walked around the van from the

record during trial.

Contrary to Parada's claim, counsel did raise the issue of prosecutorial misconduct in the

context of a motion for new trial, where he argued that the "interests of justice" required that

---

[138]Doc. 385.

[139]Docs. 165, 201.

[140]Doc. 199.

Parada receive a new trial because James Brown, the Assistant United States Attorney ("AUSA") who prosecuted the case, withheld *Brady* information regarding Tiffany Poulin's expected testimony.[141]  To establish a violation of *Brady*, a defendant must demonstrate (1) the prosecution suppressed evidence, (2) the evidence was favorable to defendant, and (3) the evidence was material.[142]  Specifically, counsel claimed that Parada "was deprived of a fair trial and substantially prejudiced by the AUSA in his failure to inform Parada's counsel that Tiffany Poulin was going to recant all of her prior statements and testimony implicating defendant in the offenses charged in the indictment."

At the hearing on Parada's motion for new trial, Brown proffered that he learned that Poulin would change her story on the morning of November 17, 2006, the very day she was called to testify and contended that he immediately notified Parada's counsel of this fact.[143]  Brown met with Poulin in the United States Marshal's office in the courthouse; during this meeting, she advised Brown that she remembered her prior testimony, but was not going to testify in accordance with it.  Brown then discontinued the meeting because he did not want to be a witness to her new statements.  Brown then spoke with defense counsel.  After exiting the Marshall's offices, Brown advised defense counsel that he needed to talk to Poulin because she was going to change her story.  Brown was fairly certain that he told defense counsel that Poulin was "going to blame Kelly [Bradley]" or something to that effect.  Likewise, Agent Wurdeman testified that he learned Poulin was going to change her testimony when Brown informed him

---

[141]Doc. 317.

[142]*Brady v. Maryland*, 373 U.S. 83, 87 (1963).

[143]Tr. Mtn. Hrg. 8/28/07, Doc. 361 at 17.

that morning, before trial.[144]

At the conclusion of the hearing, the Court denied Parada's motion for several reasons.[145] First, Parada's assertion that "Defense counsel had no notice that Ms. Poulin was going to recant her prior statements and prior testimony until twenty minutes into her testimony on direct examination by the government," was inaccurate. The Court had no reason to disbelieve, nor did Parada dispute, Brown's statement that before Poulin's testimony, defense counsel knew that her testimony was going to change. Nor did the Court have reason to doubt Brown's statement that he did not learn of Poulin's intention to change her testimony until that morning. Parada's suggestions that Brown must have known before then are purely speculative.

Second, defense counsel appeared to have made the tactical decision not to cross-examine Poulin about the nature, extent of and reasons for her changed testimony. Accordingly, Parada could not claim that he was "surprised" by the testimony. Parada's counsel did not talk to Poulin before her testimony, nor did he request a continuance or additional time after her testimony to develop a thorough cross-examination. Instead, defense counsel did not cross-examine Poulin about these matters so as not to "appear to the jury as merely counsel's participation with Paulin [sic] in presenting false and misleading testimony to the jury."[146]

Third, Poulin's changed testimony actually benefitted Parada, as it in essence called into question the Government's entire theory of the case—that Parada was the organizer of the trip to

---

[144]*Id*. at 5–6.

[145]*Id*.

[146]Doc. 317 at 4.

California to obtain the PCP. Poulin managed to impeach herself through her own testimony, leaving the jury with the impression that she was untruthful, having admitted that she lied under oath at the prior trial. These changes undermined the Government's case by foreclosing the Government from relying on Poulin's prior statements as substantive evidence, by depriving the Government of a witness who could establish the elements of the offense, and by depriving the Government of a witness who could corroborate Kelly Bradley's testimony.

Finally, the Court found there was no *Brady* violation. The Government did not suppress any evidence within the meaning of *Brady*. Instead, Brown communicated to defense counsel that Poulin's testimony was going to change almost immediately after learning so from Poulin. When the Government called Poulin to the stand, it did not know which portions of her prior testimony that she intended to disavow. And, the Government called Poulin to the stand and introduced the evidence, so there was no suppression.

Accordingly, Parada fails to demonstrate either ineffective assistance or prejudice resulting therefrom on this issue. To the extent Parada argues that his counsel failed to argue on direct appeal that this Court erroneously denied his motion for new trial on the grounds that the Government committed a *Brady* violation, the Court examines the merits of the omitted issue.[147] The Tenth Circuit reviews rulings on a motion for new trial under Fed. R. Crim. P. 33 for an abuse of discretion.[148] "We will reverse that decision only if the district court made a clear error

---

[147]*Neill v. Gibson*, 278 F.3d 1044, 1057 (10th Cir. 2001) (stating that in considering claims for ineffective assistance of appellate counsel, a petitioner must demonstrate "a reasonable probability that the omitted claim would have resulted in a reversal on appeal.").

[148]*United States v. LaVallee*, 439 F.3d 670, 700 (10th Cir. 2006).

of judgment or exceeded the bounds of permissible choice under the circumstances."[149]  Had

Parada's counsel raised this claim in the Tenth Circuit, it would have been rejected as lacking

merit, and thus counsel's omission was not prejudicial, and thus not ineffective assistance.

Similarly, with respect to the other alleged misconduct by the prosecutor, Parada does not

carry his burden under *Strickland's* prejudice prong to show how each of these assignments of

error affected the outcome of his trial.  In order to show prejudice, the defendant must establish a

reasonable probability that the result or outcome of the proceeding would have been different had

his counsel contested each of these issues.  Parada does not attempt to establish the requisite

reasonable probability.  Moreover, the Court agrees with the Government that no such

probability existed because the evidence against Parada was overwhelming and supported his

convictions on each count of conviction under all instructed theories of criminal liability.[150]  This

claim is denied.

### C.    Trial and Appeal Errors

### 1.    Counsel failed to "raise inadmissible post-arrest statement[s] by petitioner's co-conspirators," including Bradley's post-arrest statements

Although less than clear, Parada appears to argue that counsel was ineffective for failing

to object to Bradley's post-arrest statements to the DEA, because her statement changed from the

first interview to the second.  Because Bradley's post-arrest statements were not supported by

corroborating evidence, Parada argues that she was untruthful and had a strong motive to lie.

---

[149]*United States v. Trujillo*, 136 F.3d 1388, 1394 (10th Cir. 1998).

[150] *See United States v. Lott*, 36 F. App'x 946, 949 (10th Cir. 2010); *United States v. Ocampo*, 417 F. App'x 716, 718 (10th Cir. 2008).

To the extent this claim differs from that raised in Section A.2 and A.3, *supra*, Parada does not explain the legal basis for his claim that such statements were inadmissible or how his counsel's failure to challenge such admission affected the result of his trial.  Indeed, the record shows that Bradley's contradictory statements and post-arrest lies to Agent Wurdeman were fully presented to the jury, either by the Government or by Parada, so the jury's credibility determination was fully formed.[151]  Accordingly, Parada fails to establish his burden under either *Strickland* prong, and this claim is denied.

2.     **Counsel failed "to request an interlocutory appeal on [sic] relation to petitioner's denial of his *James* hearing the district court allowed petitioner's co-conspirator[]s ['] post arrest custodial statements into evidence"**

On October 31, 2006, Parada filed a Motion *in Limine* to exclude co-conspirator statements of others involved in the conspiracy, including John McNeill, Naeroshawn Smith, Saketha Champion, Tiffany Poulin and Kelly Bradley,[152] and requested a *James* hearing on this matter.   The Court considered the motion at a pretrial hearing on November 9, 2006, at which time the Court denied the request based on its prior rulings at Parada's prior trial.[153]  The Court denied the motion *in limine* and determined that the co-conspirator's statements were admissible under Fed. R. Evid. 801.[154]  Parada contends that because the alleged conspiracy ended when he and his co-defendants were arrested, any post-arrest custodial statements are inadmissible, and thus counsel was ineffective because he failed to bring an interlocutory appeal on the issue.

[151]*See infra*, Section C.5 at 32–33.

[152]Doc. 285.

[153]Doc. 359, Tr. at 22-25.

[154]*Id*. at 30.

The courts of appeal have no jurisdiction other than what is conferred upon them by statute.[155]  28 U.S.C. § 1291 limits appellate jurisdiction to appeals from "final decisions of the district courts."  The final judgment rule prohibits appellate review in a criminal case until conviction and imposition of a sentence.[156]  Thus, because the Tenth Circuit did not have jurisdiction to consider any interlocutory appeal of this Court's admission of the co-conspirator statements, counsel did not ineffectively fail to file such an appeal.  Parada's claim is denied.

### 3.     Counsel failed to request a jury instruction regarding accomplice testimony

No basis exists for this claim because Parada's counsel requested a jury instruction regarding accomplice testimony.[157]  Counsel later withdrew the request, as there was no accomplice testimony at trial.[158]  Instead, the jury was instructed on testimony of co-defendants who enter into a plea agreement with the government.[159]  Accordingly, Parada fails to demonstrate either ineffective assistance of counsel of prejudice resulting therefrom, and this claim is denied.

### 4.     Counsel failed "to interview government witnesses"

Parada contends that his counsel ineffectively failed to interview Poulin after she advised the prosecutor that she intended to change her testimony prior to trial, and that this failure constitutes deficient performance because his counsel "[wasn't] prepare[d] to effectively cross-

---

[155]*United States v. Walker*, 915 F.2d 1463, 1465 (10th Cir. 1990) (citing *Flanagan v. United States*, 465 U.S. 259, 265 (1984)).

[156]*Id*. (citing *United States v. Thompson*, 814 F.2d 1472, 1474 (10th Cir. 1987), *cert. denied*, 484 U.S. 830 (1987)).

[157]Doc. 286; *see* 10th Cir. Crim. Pattern Instr. 1.14.

[158]Doc. 360, Hrg. Tr. at 2.

[159]*See* Doc. 307, Instr. No. 31.

examin[e] the government witness Ms. Poulin when she recanted her previous trial testimony." This claim fails under both *Strickland* prongs.

Parada does not explain what tactical advantage any interview would have yielded, nor the basis for his claim that his counsel's failure to interview Poulin resulted in an ineffective cross-examination. Even assuming for argument, however, that his counsel performed deficiently as alleged, he does not carry his burden to show prejudice. If anything, Poulin's decision to recant her testimony benefitted Parada, as her testimony called into question the Government's theory-of-the-case, namely, that Parada was the organizer of the trip to California to obtain the PCP. Moreover, Poulin failed to recall key events from the trip, such as the "dude" coming to the hotel room with a bag, or that she heard Parada and Fly counting money when the "dude" was there. Instead, she testified that the dude did not have a bag with him, but just came to smoke a couple of blunts and then left. Poulin also failed to recall seeing PCP beneath the kitchen counter. As the Government points out, neither side knew Poulin was going to change her testimony until that morning at trial. If anything, Poulin's trial testimony undermined the Government's case by foreclosing it from relying on Poulin's prior statements as substantive evidence, by depriving it of a witness who could establish elements of the offense, and by depriving it of a witness who could corroborate Bradley's testimony. Accordingly, no basis exists to conclude that Parada suffered *Strickland* prejudice as a result of his counsel's alleged error.

### 5.      Counsel failed "to impeach the government witnesses"

Parada asserts that his counsel did not point out Bradley's multiple inconsistent statements or her recantation of post-arrest statements she gave to officers, or that Poulin

recanted her prior trial testimony.  This claim is without merit.

The record shows that Bradley's contradictory statements and post-arrest lies to Agent Wurdeman were fully presented to the jury, either by the Government or by Parada, so the jury's credibility determination was fully informed.  During direct examination, Bradley admitted that she falsely told Wurdeman that they were coming from a friend's wedding in Colorado, that she was McNeill's girlfriend, and that she did not know about the PCP.[160]  In addition, she admitted that she lied again to Wurdeman in a subsequent interview about when she discovered the PCP.[161]  Bradley admitted that she changed her story after being indicted as a co-defendant in this case and being offered a deal by the Government.[162]  On cross-examination, Parada's counsel confronted Bradley with the fact that she had changed her story after being indicted;[163] that she had lied to Wurdeman when she told him that Poulin was the only one who had gotten into the cooler that contained the PCP on the way back;[164] and that she could have told the truth to Wurdeman in her first interview, but did not.[165]  All of Bradley's lies and inconsistent statements were presented to the jury.

Further, Parada's counsel had no tactical reason to impeach Poulin because her changed testimony benefitted Parada, as previously discussed.  During direct examination, Poulin testified

---

[160]Trial Tr. at 252–53.

[161]*Id*. at 253–58.

[162]*Id*. at 259.

[163]*Id*. at 275.

[164]*Id*. at 276–77.

[165]*Id*. at 282.

that her testimony at Parada's first trial was a made up lie,[166] and that her testimony in the second trial that exculpated him was "the truth."[167]  If counsel had effectively impeached Poulin, it follows that her exculpatory testimony was false.  Parada does not explain how he was prejudiced by such alleged failure, and thus, his counsel did not perform deficiently in failing to impeach Poulin, and such failure did not prejudice Parada.  This claim is denied.

6.      **Counsel failed to request a jury instruction on entrapment**

Parada claims that Bradley entrapped him into writing her a letter (Government Exhibit 13), which Bradley then tampered with and gave to prosecutors, or, alternatively, she "wrote a self letter to herself," portraying herself as an innocent victim.  This claim is without merit.

Parada's counsel did not ineffectively fail to request an entrapment instruction on these facts because no basis existed to request one.  The Government did not request or suggest that Bradley write this letter, so any entrapment could not have been the product of government action, which is necessary to establish an entrapment defense.[168]  Moreover, as the Government notes, Bradley received and/or wrote the letter after the vehicle stop and after the offense had been completed, so it could not have affected Parada's disposition to commit the charged offenses, which he committed before the letter was written.  Thus, Parada was not entitled to an entrapment instruction and his counsel did not deficiently fail to request one.  This claim is denied.

---

[166]*Id*. at 337, 342.

[167]*Id*. at 341.

[168]*See United States v. Williams*, 488 F.2d 788, 789 (10th Cir. 1973) ("To constitute entrapment the deception must be such that it actually implants the criminal design in the mind of the accused and his criminal conduct must be the product of the action of the government officials.").

### 7. Counsel failed to rebut the impeachment evidence the prosecutor presented on appeal

Parada contends that counsel neglected to rebut and correct the misrepresentation of the Government by citing to improper impeachment evidence presented at trial as substantial evidence, including reference to co-defendant Poulin's post-arrest letters. Parada's argument is without merit. As the Government notes, in his reply brief filed on direct appeal, counsel explicitly referred to the letters, argued that they were unworthy of credit, and that Poulin's testimony was similarly unworthy:

> The appellant has sufficiently briefed this issue in his opening brief with the addition that the government includes in its argument letters which they attribute to have been written by Mr. Parada to Tiffany Poulin, (Aple. Br. at 43-44) (Supp. Vol. II, Govt. Ex. 14 and 15). Tiffany Poulin recanted previous testimony and testified that these letters were in fact written by her cell mate and were not written by Mr. Parada. (R.O.A. Vol. 6, p. 342). These letters were presented at trial as impeachment evidence. Defendant objected to their admission as substantive evidence and as not properly authenticated under Rule 901. The content of these letters cannot be used by the government as substantive evidence to support the conviction. (citation omitted).[169]

The Tenth Circuit went on to hold the evidence at trial was sufficient to support Parada's conviction.[170] Accordingly, Parada's claim lacks any basis in fact, and is denied.

### 8. Counsel failed "to raise a defective chain of custody" regarding the handling of the PCP recovered during the traffic stop

Parada contends that counsel failed to raise a defective chain of custody objection

---

[169]*United States v. Parada*, No. 07-3272, Appellant's Reply Brief, 2008 WL 2513935, at *5 (2009).

[170]*United States v. Parada*, 577 F.3d 1275, 1284 (10th Cir. 2009) (citing in support, evidence that Parada planned the cross-country trip, purchased the cooler in which the PCP was stored, met the alleged supplier to receive the drugs, indicated knowledge of the cooler's contents, devised a cover-up story following the group's apprehension, and complained about the amount of money he lost when the police seized the drugs) .

regarding the handling of the PCP recovered during the traffic stop. The record shows, however, that Parada's counsel repeatedly questioned the Government's witnesses about the chain of custody relating to the PCP, in an apparent attempt to plant doubts with the jury. For example, in questioning Officer Oehm, counsel pointed out that Oehm did not do an Evidence Custody Report, even though he was the arresting officer.[171] Oehm explained that he did not do a report because the DEA took over the case.[172] In addition, during his cross-examination of Agent Wurdeman, counsel pointed out that Wurdeman did not show up until three or four hours after Officer Oehm performed his initial search of the van, suggesting that this lapse affected the integrity of the chain of custody.[173] Parada's counsel also questioned Wurdeman about the absence of an inventory of evidence custody receipt regarding items taken from the van,[174] and suggested that the agents did not follow the proper procedures.[175] Counsel also cross-examined DEA Chemist Andrea Michiels about the chain of custody, during which she produced the evidence custody receipt for his review.[176]

During redirect examination, Officer Oehm explained in detail that he followed every required step to document and preserve the PCP.[177] Agent Wurdeman later gave detailed

---

[171]*See* Trial Tr. at 22–24.

[172]*Id.* at 24.

[173]*Id.* at 25; *see also, e.g.*, *id.* at 30–31 (counsel asked Oehm about the "particular procedure that's used to follow the chain of custody of illegal drugs" and suggested that the procedures were not followed in this case); *id.* at 32–33 (counsel asked Oehm about how other items in the van were collected and inventoried).

[174]*Id.* at 148.

[175]*Id.* at 148–52.

[176]*Id.* at 197.

[177]*See id.* at 52–57.

testimony about his arrival at the crime scene, taking of photographs, collection of samples of PCP, preservation of the same, and transportation to and from the DEA laboratory.[178] Wurdeman testified that he followed all of the relevant DEA protocols in collecting and handling the evidence.[179]

Based on this record, no basis exists to find that Parada's counsel performed ineffectively under *Strickland*'s performance prong. Further, Parada does not carry his burden under the prejudice prong to show that his counsel's performance in this regard affected the outcome of the trial. Accordingly, this claim is denied.

### 9. Counsel failed "to request [a] jury instruction on the chain of custody"

This claim fails under both *Strickland* prongs. Parada's counsel did not perform ineffectively in failing to request a special jury instruction regarding the chain of custody because no basis existed for this Court to give such an instruction. Although Parada does not suggest what language counsel should have suggested, this instruction is usually given if a colorable question is raised at trial regarding the authentication of a critical item of evidence.[180] As noted above, Officer Oehm and Agent Wurdeman testified that the evidence was handled properly, and no defect regarding the chain of custody in this case called for a special instruction.

Further, Parada necessarily fails to sustain his burden to show prejudice because he does not allege or argue that, but for his counsel's failure to request such an instruction, the result of the trial would have been different. A defect in the chain of custody goes to the weight of the

---

[178]*See id*. at 78–101.

[179]*Id*. at 99; *see also* Doc. 152, Tr. 8/25/03 Motions Hr'g at 131 (Agent Wurdeman testified that he prepared custody receipt for all of the evidence that he collected and took photos of everything before it was disposed of).

[180]*See United States v. Gorman*, 312 F.3d 1159, 1163 (10th Cir. 2002).

evidence, not its admissibility.[181]  Counsel attempted to draw out or suggest such defects in his cross-examination of Oehm and Wurdeman.  This claim is also denied.

### 10. Counsel failed "to raise that Petitioner's Due-Process [sic] was violated d[ue] to the arresting officer Oehm's destruc[t]ion of the alleged marijuana," found in the van at the time of the stop, which was never produced

No factual basis exists for this claim because Parada's counsel did raise this issue on Due Process grounds before this Court in his Motion to Suppress or Dismiss for Failure to Preserve Alleged Marijuana.[182]  In that motion, counsel cited *Arizona v. Youngblood*,[183] and *California v. Trombetta*,[184] in support of his argument that the Government's failure to preserve the marijuana constituted a due process violation.[185]  This Court denied the motion on three grounds: 1) that Parada lacked standing to challenge the cooler found in the van; 2) that Parada failed to establish a *Trombetta* violation because he did not show or allege that the marijuana had exculpatory value that was apparent before its destruction; and 3) that Parada failed to establish a *Youngblood* violation because the marijuana had no evidentiary value and there was no evidence that Officer Oehm acted in bad faith.[186]

On direct appeal, the Tenth Circuit affirmed this Court's finding that Parada did not have

---

[181]*Id.*

[182]Doc. 255.

[183]488 U.S. 51 (1988).

[184]467 U.S. 479 (1984).

[185]Doc. 255 at 3–4.

[186]Doc. 278.

standing to challenge the search of the cooler.[187]  Although counsel did not pursue the Due

Process claim on direct appeal, Parada does not challenge the Court's legal reasoning for denying

his claim, which in any event, would have been rejected based on Parada's lack of standing.[188]

Thus, Parada cannot show prejudice resulting from his counsel's alleged deficiencies, and this

claim is denied.

> **11.     Counsel failed "to raise confrontation issue on relation to the government chemist"**

Parada contends that because the initials of another chemist, Nicole Winzel, appeared on

one of the exhibits tested, his counsel's failure to call her as a witness is a confrontation issue, as

she had "something to do with" the samples and the evidence bag and testing of the PCP.  This

argument is without merit.

First, Parada fails to show deficient performance under *Strickland*.  His only fact in

support of this claim is that Wenzel's initials appear on an evidence bag.  As the Government

points out, even if she had some kind of involvement with the evidence bag and testing of the

PCP, no basis exists to conclude that her testimony would have aided Parada's case or bolstered

his defense that he had no knowledge of the PCP in the van.  Because no basis exists to conclude

as much, the Court may presume that Parada's counsel's decision not to call her as a witness fell

within the wide range of reasonable professional judgment.[189]  Parada posits no facts or

---

[187]*Parada*, 577 F.3d at 1280.

[188]*See id.*; *see also United States v. McNeill*, 136 F. App'x 153, 156 (10th Cir. 2005) (finding that co-defendant John McNeill, who was also a passenger, had no standing to challenge the search).

[189]*See Anderson v. Attorney Gen. of Kan.*, 425 F.3d 853, 859 (10th Cir. 2005) ("Our review of trial counsel's performance 'must be highly deferential' and we 'must indulge in a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the

reasonable inferences that would overcome this presumption, so his claim fails under the performance prong.

Moreover, Parada does not claim that Wenzel would have provided testimony that would have aided his case or bolstered his defense if she had been called; indeed, it is likely that she would have corroborated the Government's case. Thus, no basis exists to conclude that there is a reasonable probability that, but for his counsel's failure to call Wenzel, the result of these proceedings would have been different.[190] Accordingly, Parada fails to show prejudice under *Strickland's* prejudice prong, and his claim is denied.

### 12. Counsel failed "to request a chemist expert to testif[y] for the defense and dispute the weight and purity of the PCP"

At trial, the Government's chemist expert, Michiels, testified that the PCP mixture found in the van amounted to 340.7 grams of actual PCP.[191] The jury found that Parada conspired to distribute 100 grams or mor of PCP.[192] At sentencing, counsel for Parada contested the quantity of PCP determined to be possessed by Parada and his co-defendant, and argued that Parada should be held accountable for 202.8 grams of actual PCP, with a corresponding two-level reduction in his base level offense calculation. Counsel presented Ex. 2 in support of his argument, which was an affidavit from Dan McCarty, a forensic document examiner, who opined that there was a plus or minus 2.5 point deviation in the report and findings of the Government's

---

presumption that, under the circumstances, the challenged action might be considered sound trial strategy.'") (quoting *Strickland*, 466 U.S. at 689).

[190]*See Byrd v. Workman*, 645 F.3d 1159, 1168–69 (10th Cir. 2011).

[191]Trial Tr. at 196.

[192]Doc. 309.

chemist expert. The Court rejected Parada's argument and used the expert's calculation in determining his base level offense.

Parada now argues that counsel was ineffective because he did not present McCarty's affidavit at trial to rebut the Government's expert testimony on weight and purity of the PCP. This argument is without merit. Even if counsel had presented this evidence, McCarty's opinion was that the quantity of PCP was 202.8 grams, well over the 100 grams for which the jury found Parada accountable. While this difference is significant for sentencing purposes, it had no impact on the jury's *Apprendi* verdict at trial. Thus, Parada does not satisfy either *Strickland* prong, and this claim is denied.

### 13. Counsel argued "the wrong argument" in Petitioner's Fourth Amendment claim

Parada asserts that his counsel ineffectively failed to challenge Officer Oehm's stop of the van "for arguing the wrong argument in petitioner's fourth amendment claim," which he contends should have been that Oehm had no basis to stop the van in the first instance and illegally detained him thereafter. While counsel did raise these claims in the Motion to Suppress filed in the first trial and reasserted in the second, he did not argue on direct appeal that this Court erroneously denied his claim that Oehm had no basis to stop the van for violating K.S.A. § 8-1522.[193] Thus, the Court examines the merits of the omitted issue on appeal.[194]

To succeed on this claim, Parada must establish that there is merit to his claim that this

---

[193]Counsel did challenge this Court's finding that his subsequent detention was unlawful. *See United States v. Parada*, No. 07-3272, Brief of Appellant, 2008 WL 2211954, at *9.

[194]*Neill v. Gibson*, 278 F.3d 1044, 1057 (10th Cir. 2001).

Court should have suppressed the evidence in the van as to him because no basis existed for the initial stop. However, the Tenth Circuit has already determined the issue in the direct appeal brought by co-defendant McNeill.[195] McNeill, who joined in the motion to suppress in the first trial,[196] argued that this Court erred in denying the motion to suppress, and that the stopping of the van was pretextual and a result of racial profiling.[197] The Circuit rejected that argument, holding that "the record clearly supports the District Court's holding that Officer Oehm's stopping of defendants' van was pursuant to a perceived traffic violation, and was not just the product of racial profiling."[198] Thus, this issue is precluded by the law of the case doctrine.[199]

Moreover, the court went on to hold that even if the resulting search and seizure of the van and PCP had been unlawful, McNeill lacked standing to challenge the search of the cooler.[200] In Parada's direct appeal from the second trial, the court determined that he also lacked standing to challenge the search of the cooler.[201]

Parada argues that the Tenth Circuit's holding in *McNeill* should not apply to him, as there has been an intervening change in case law that overrules the decision in *McNeill*, citing the

---

[195]Doc. 61.

[196]*United States v. McNeill*, 136 F. App'x 153 (10th Cir. 2005).

[197]*Id*. at 156.

[198]*Id*.

[199]*Parada*, 577 F.3d 1275, 1279–80 (10th Cir. 2009) (citing *United States v. LaHue*, 261 F.3d 993, 1010 (10th Cir. 2001)) (explaining "[t]he law of the case doctrine posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent states in the same case. Furthermore, when a rule of law has been decided adversely to one or more co-defendants, the law of the case doctrine precludes all other co-defendants from relitigating the legal issue.").

[200]*McNeill*, 136 F. App'x at 157.

[201]*Parada*, 577 F.3d at at 1280.

41

Supreme Court's decision in *Brendlin v. California*.[202]  The Court disagrees.  The ruling in

*Brendlin* did not change the Tenth Circuit's long-standing rule that in order for a defendant to

have standing to challenge a search, he must show that there is a factual nexus between his

allegedly illegal detention and the discovery of incriminating evidence that resulted from that

search;[203] instead, it merely reiterated the proposition that a defendant can challenge the

constitutionality of his own seizure.[204]  Thus, Parada had standing to challenge his seizure, but

not the search of the van, and the Tenth Circuit's ruling on both the validity of the initial stop and

subsequent search, as well as lack of standing, applies to Parada.  Accordingly, because this

claim lacked merit, Parada's counsel was not ineffective in omitting it on direct appeal, and

Parada suffered no prejudice arising from such omission.[205]  This claim is denied.

### 14.    Counsel failed "to raise *Miranda* violation by arresting officer"

Parada contends that his counsel ineffectively failed to argue that the arresting officers

did not read him the *Miranda* warning while he was being detained and after he was arrested.

This claim fails under both *Strickland* prongs.  First, counsel did not perform deficiently by

failing to raise this issue because Parada did not make any un-*Mirandized* post-arrest declarations

to any officer.  When Officer Oehm opened the apple juice bottle and asked the occupants of the

van what was inside the bottle, none of them responded.[206]  Parada subsequently exercised his

---

[202]551 U.S. 249 (2007).

[203]*See United States v. Zavala*, 195 F. App'x 746, 750 (10th Cir. 2006) (citing *United States v. De Luca*, 269 F.3d 1128, 1131 (10th Cir. 2001)).

[204]*Brendlin*, 551 U.S. at 263.

[205]*See United States v. Orange*, 447 F.3d 792, 797 (10th Cir. 2006).

[206]Doc. 15, Hrg. Tr. at 45–46.

right to remain silent upoon being *Mirandized* by Agents Russell and Wurdeman.[207]  Because

Parada exercised his right to remain silent, his counsel had no basis to exclude any statements

received in violation of *Miranda*.  Moreover, Parada does not allege or otherwise carry his

burden to demonstrate that there was a reasonable probability that, but for his counsel's failure to

raise this argument, the result of the trial would have been different.  This claim is denied.

> 15.    **Counsel failed to question the jury instructions that permitted the Government to constructively amend the Indictment, in violation of his Due Process rights**

Parada does not identify the jury instructions that he claims constructively amended the

Indictment, or explain why the instructions were inappropriate or erroneous or how they

constructively amended the Indictment as a matter of law.  Because Parada fails to provide the

Court with any factual or legal basis to conclude that counsel performed deficiently, the Court

must reject his claim alleging as much.[208]

> D.    **Sentencing and Appeal**

Because Parada contends that counsel was ineffective because he did not raise any

sentencing issues on direct appeal, the Court examines the merits of the omitted issues on

appeal.[209]  The court of appeals reviews a sentence for reasonableness, and applies an "abuse-of-

---

[207]Doc. 285 at 4–5.

[208]*See Hatch v. Oklahoma*, 58 F.3d 1447, 1471 (10th Cir. 1995) ("To be entitled to an evidentiary hearing on claims raised in a habeas petition, the petitioner must allege facts which, if proved, would entitle him to relief.") (internal quotations omitted), *overruled in part on other grounds* by *Daniels v. United States*, 254 F.3d 1180, 1181 n.1 (10th Cir. 2001) (en banc).  Further, "the allegations must be specific and particularized, not general or conclusory." *Id*.

[209]*Neill v. Gibson*, 278 F.3d 1044, 1057 (10th Cir. 2001) (stating that in considering claims for ineffective assistance of appellate counsel, a petitioner must demonstrate "a reasonable probability that the omitted claim would have resulted in a reversal on appeal.").

discretion standard of review."[210]  Reasonable review has both procedural and substantive

components.[211]  "Review for procedural reasonableness focuses on whether the district court

committed any error in calculating or explaining the sentence."[212]  "Review for substantive

reasonableness focuses on whether the length of the sentence is reasonable given all the

circumstances of the case in light of the factors set forth in § 3553(a)."[213]  The district court's

decision that the § 3553(a) factors, on the whole, justify the sentence imposed, is given "due

deference."[214]  Further, a sentence imposed within the properly calculated advisory range, like

Parada's, is entitled to a rebuttable presumption of reasonableness.[215]  For the reasons discussed

below, the Court finds that Parada has not demonstrated that any of the sentencing issues would

have merit on appeal, and thus his claims fail under the prejudice prong of *Strickland*.

### 1.      Section 851 Information

Prior to trial, the Government filed a § 851 Information notifying the Court of its intent to

seek an enhanced sentence on the basis of Parada's prior drug trafficking conviction.[216]  The

Government averred that Parada had been convicted of "POSSESSION OF COCAINE WITH

INTENT TO SELL, a felony offense; convicted in the Superior Court of Los Angeles, County of

---

[210]*Gall v. United States*, 552 U.S. 38, 46 (2007).

[211]*United States v. Martinez*, 610 F.3d 1216, 1223 (10th Cir. 2010), *cert. denied*, —U.S.—, 131 S. Ct. 543 (2010).

[212]*United States v. Friedman*, 554 F.3d 1301, 1307 (10th Cir. 2009).

[213]*Id*. (quotation omitted).

[214]*United States v. Smart*, 518 F.3d 800, 808 (10th Cir. 2008) (quotation omitted).

[215]*United States v. Sanchez-Juarez*, 446 F.3d 1109, 1114 (10th Cir. 2006).

[216]Doc. 295.

Los Angeles, State of California, under the alias 'Alberto Guiterrez,' on September 1, 2000, in case number YA044430."[217]  Parada contends that he actually pled to possession of cocaine, not possession of cocaine with intent to sell, and thus his counsel was ineffective because he did not request an evidentiary hearing on the matter.

Parada's claim is conclusively rebutted by the evidence at his first jury trial, at which time the Government called his probation officer, Jimmie T. Simpson, who supervised Parada for this offense.[218]  Simpson testified that in case number YA044430, Parada "was convicted of possession of a controlled substance for sale."[219]  In support of this testimony, the Government introduced a certified copy of Parada's court proceedings, which showed he was convicted of this offense.[220]  Thus, the Information filed by the Government was not defective, and this Court did not erroneously rely on it to enhance Parada's sentence.  Accordingly, Parada's counsel did not perform deficiently in failing to challenge the Information because no basis existed to challenge it.[221]

## 2.    Obstruction of justice enhancement

Parada contends that his counsel was ineffective for failure to contest the two-level enhancement for obstruction of justice based on Parada's providing the probation office with

---

[217]*Id*.

[218]Doc. 154, Tr. Tran. at 5–6.

[219]*Id*. at 10–11.

[220]*Id*. at 11, Gov't Ex. 18.

[221]Ironically, Parada successfully challenged the Court's admission of this previous conviction evidence as an abuse of discretion under Fed. R. Evid. 403 and 404(b) in his first direct appeal, where the Tenth Circuit reversed and remanded for a new trial.  *See United States v. McNeill*, 136 F. App'x 153, 158 (10th Cir. June 17, 2005).

materially false information regarding his date of birth and social security number.  Parada's counsel contested this enhancement before this Court, both in an objection to the Presentence Investigation Report ("PSR") and in a sentencing memorandum filed before the sentencing hearing.[222]  The Court overruled counsel's objections because, when looking at the entire context of Parada's criminal history and prior reports to law enforcement, it appeared he had intentionally been providing false information about his identity for a long time.  U.S.S.G. § 3C1.1 permits an increase for obstruction if the defendant impeded the administration of justice during the course of the investigation, prosecution, or sentencing of the defendant.  Identity of an individual is material to the sentencing process to accurately determine a defendant's criminal history and other information, and is necessary for the Court to know the actual identity of the individual being sentenced.  In this case, the Court found that Parada's true date of birth is the essence of materiality in this matter when determining criminal history.

Parada contends that his counsel should have argued that the Government was required to indict him for the alleged obstruction of justice, citing the line of cases beginning with *Apprendi v. New Jersey*, which held "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."[223]  As the Tenth Circuit recently reaffirmed, the Supreme Court "has definitively held that *Apprendi* does not apply to the present advisory-Guidelines

---

[222]*See* PSR ¶¶ 125–33; Doc. 334 (incorporating objections to PSR).

[223]530 U.S. 466, 490 (2000).

regime."[224] While the Tenth Circuit has "left open the possibility that due process may require proof by clear and convincing evidence before imposition of a Guidelines enhancement that increases a sentence by an 'extraordinary or dramatic' amount,"[225] there was no such increase here. If Parada's counsel had raised this argument and the Court agreed, the Guidelines sentencing range would have been 262-327 months; but with the enhancement, his range was not dramatically higher at 324-405 months.[226] Accordingly, Parada cannot demonstrate either prong of *Strickland*, and this claim is denied.

### 3.    Criminal History and 18 U.S.C. § 3553(a) Factors

Parada contends that counsel ineffectively 1) failed to challenge the PSR's calculation of his criminal history score, 2) failed to request a mitigating role adjustment, 3) failed to argue for a downward variance under § 3553(a) based on mental and physical injuries he incurred as a result of being shot in 1999, and 4) failed to argue for a downward variance under § 3553(a) based on the fact that he was sexually abused as a child.

At sentencing, counsel challenged Parada's criminal history score of VI, and argued that the PSR erroneously assessed four criminal history points in calculating his history score because it incorrectly assessed criminal history points for his juvenile convictions and other adult

---

[224]*United States v. Ray*, 704 F.3d 1307, 1314 (10th Cir. 2013) (citing *Untied States v. Booker*, 543 U.S. 220, 259 (2005)).

[225]*Id.* (quoting *United States v. Olsen*, 519 F.3d 1096, 1105 (10th Cir. 2008)).

[226]U.S.S.G. sentencing table (2007).

convictions.[227]  Counsel reasserted these objections before Parada's sentencing hearing.[228]  The Court overruled this objection, as both offenses in question were committed when Parada was eighteen years old; any confusion over his age was due in part to the false information given to Probation, as discussed, *supra*.

 Second, counsel also argued for a mitigating role adjustment under U.S.S.G. § 3B1.2.[229] Parada requested that he be given a three-level reduction in his offense level based upon his claimed "minor role" in this offense.  Parada asserted that the evidence shows that Naeroshawn Smith paid for the expenses of the enterprise and that Bradley rented the vehicle, rented the hotel, checked into the hotel and drove the vehicle.  He also contends that his participation in the offense was that he was merely present in the vehicle when it was stopped.  The Court denied this request, finding that the evidence at trial established that Parada was an organizer or leader of the offense, and that this offense involved five or more participants.  The evidence at trial, in particular, Kelly Bradley's testimony, also showed that Parada planned and organized the trip to California, with the purpose to obtain a quantity of PCP for distribution, and that he recruited the co-defendants to assist him in this unlawful adventure.  After weighing the totality of the circumstances, the Court was not required to find, based solely on Parada's bare assertion, that such a role adjustment was warranted.

 Finally, although Parada's counsel did not argue for a downward departure based on Parada's physical and mental condition or sexual abuse, counsel did request a variance of 240

---

[227]*See* 4/3/07 PSR ¶¶ 111–16.

[228]Doc. 334 at 2.

[229]*Id*. at 2–5.

months on different grounds, which the Court denied.[230]  Moreover, any request for a downward

departure on the basis of Parada's history and condition would likely have been rejected, as it is

subject to countervailing considerations under § 3553(a).  In addition to being the organizer or

leader of the conspiracy, Parada had factors that increased his guideline range, including an

enhancement for obstruction and a high criminal history category.  Because this claim would

have no merit on appeal, Parada fails to meet either *Strickland* prong, and his claim is denied.

## V .    Certificate of Appealability

Effective December 1, 2009, Rule 11 of the Rules Governing Section 2255 Proceedings

requires the Court to grant or deny a certificate of appealability ("COA") when making a ruling

adverse to the petitioner.  "A certificate of appealability may issue . . . only if the applicant has

made a substantial showing of the denial of a constitutional right."[231]  A petitioner may satisfy his

burden only if "reasonable jurists would find the district court's assessment of the constitutional

claims debatable or wrong."[232]  A petitioner is not required to demonstrate that his appeal will

succeed to be entitled to a COA.  He must, however, "prove something more than the absence of

frivolity or the existence of mere good faith."[233]  "This threshold inquiry does not require full

consideration of the factual or legal bases adduced in support of the claims.  In fact, the statute

---

[230]Doc. 334.

[231]28 U.S.C. § 2253(c)(2).  The denial of a § 2255 motion is not appealable unless a circuit justice or a circuit or district judge issues a certificate of appealability.  *See* Fed. R. App. P. 22(b)(1); 28 U.S.C. § 2253(c)(1).

[232]*Said v. Ortiz*, 393 F.3d 1166, 1171 n.3 (10th Cir. 2004) (quoting *Lennard v. Dretke*, 524 U.S. 274, 282 (2004)).

[233]*Miller-El v. Cockrell*, 537 U.S. 322, 338 (2003).

forbids it."[234]  For the reasons detailed in this Memorandum and Order, Parada has not made a

substantial showing of the denial of a constitutional right, and the Court denies a COA as to its

ruling on his § 2255 motion.

**IT IS THEREFORE ORDERED BY THE COURT** that Petitioner Norman Parada's

Motion to Vacate pursuant to 28 U.S.C. § 2255 (Doc. 386) is DENIED; Parada is also denied a

COA.

**IT IS FURTHER ORDERED BY THE COURT** that Parada's Motion to Proceed In

Forma Pauperis (Doc. 387) is GRANTED; Parada's Motion to Produce Discovery (Doc. 401) is

DENIED as moot.

**IT IS SO ORDERED.**

Dated: <u>September 12, 2013</u>

 S/ Julie A. Robinson  
JULIE A. ROBINSON  
UNITED STATES DISTRICT JUDGE

---

[234]*Id.* at 336; *see also United States v. Silva*, 430 F.3d 1096, 1100 (10th Cir. 2005).