IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

      Plaintiff,

      v.

NORMAN A. PARADA,

      Defendant.

Case No. 5:03-40053-JAR-1

## MEMORANDUM AND ORDER

This matter is before the Court on Defendant Norman A. Parada's Motion for Compassionate Release (Doc. 436) under section 3582(c) of the First Step Act ("FSA"). Parada, who reportedly tested positive for COVID-19 on May 8, 2020, seeks release on grounds that the virus presents a serious risk to his health and the Bureau of Prisons ("BOP") has not taken adequate steps to protect inmates in its custody. The government opposes Parada's motion. For the reasons set forth in detail below, the Court denies Parada's motion.

**I.**    **Background**

On May 21, 2003, Parada and three others were indicted for: (1) possession with intent to distribute 100 grams or more of PCP; and (2) conspiracy to distribute 100 grams or more of PCP.[1] A jury convicted Parada on both charges on November 26, 2003, and he was subsequently sentenced to a controlling 405-month term of imprisonment.[2] On June 17, 2005,

---

[1] Doc. 1.
[2] Doc. 138.

1

the United States Court of Appeals for the Tenth Circuit reversed Parada's convictions based on an evidentiary error and remanded the case for a new trial.[3]

Following his second trial, Parada was again convicted by a jury on both counts.[4] Parada was sentenced to two controlling terms of 405-months' imprisonment to be served concurrently.[5] Parada appealed to the Tenth Circuit, and that court affirmed his conviction on August 29, 2009.[6] Parada filed a petition for a writ of certiorari with the United States Supreme Court, which was denied on May 24, 2010.[7]

Parada then filed a motion for relief under 28 U.S.C. § 2255 based on allegations of ineffective assistance of counsel. This Court denied his motion,[8] and the Tenth Circuit declined to issue a certificate of appealability.[9] Since then, Parada has filed three separate motions for authorization to file a successive § 2255 motion, each of which the Tenth Circuit has denied.

On January 23, 2015, this Court reduced Parada's sentence from a 405-month controlling term of imprisonment to a 327-month term of imprisonment based on a retroactive change in sentencing laws and resulting amended offense level.[10] Then, on June 13, 2016, Parada filed another motion for relief under § 2255 without seeking prior authorization from the Tenth Circuit.[11] This Court dismissed that § 2255 motion as an unauthorized successive motion.[12]

---

[3] *United States v. McNeill*, 136 F. App'x 153 (10th Cir. 2005).

[4] Doc. 309.

[5] Doc. 347.

[6] *United States v. Parada*, 577 F.3d 1275 (10th Cir. 2009).

[7] Docs. 371, 372.

[8] Doc. 412, 419.

[9] *United States v. Parada*, 555 F. App'x 763 (10th Cir. 2014).

[10] Doc 422.

[11] Doc. 426.

[12] Doc. 433.

Parada is currently serving his sentence at Federal Correction Institution ("FCI") Lompoc in California. He is forty-two years old and his projected release date from the BOP is June 27, 2026. As of August 6, 2020, the BOP reports that FCI Lompoc has 827 inmates who have tested positive for COVID-19.[13] The BOP further reports that 1,057 tests have been completed and no tests are pending.

On May 26, 2020, Parada filed a *pro se* motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A). In support of his motion, Parada states that he suffers from kidney disease, intestinal and bladder issues, migraines, post-traumatic stress disorder ("PTSD"), blindness in one eye, and the presence of the sickle cell gene.[14] Parada reportedly tested positive for COVID-19 on May 8, 2020. He states that the BOP has not taken sufficient care to mitigate the spread of COVID-19 within FCI Lompoc, nor provide the necessary care to those who contract the virus. Parada requests the Court reduce his term of imprisonment to time served. With his motion, Parada includes a yet-unverified release plan, indicating he would reside with his step-sister and her family in Wilmington, California.[15]

The government opposes Parada's motion, contending that he has failed to exhaust his administrative remedies and that, even if he had, the sentencing factors set out in 18 U.S.C. § 3553(a) weigh against granting release.

Under Standing Order 19-1, the Federal Public Defender ("FPD") has been appointed to represent indigent defendants who may qualify to seek compassionate release under section

---

[13] Federal Bureau of Prisons, *COVID-19 Coronavirus: COVID-19 Cases*, https://www.bop.gov/coronavirus/index.jsp (last accessed August 08, 2020).

[14] Doc. 436.

[15] The United States Probation Office has informed the Court that the Central District of Los Angeles has suspended investigations of release plans due to the number of pandemic-related motions for compassionate release and thus, as of the date of this Order, it has unable to verify Parada's proposed plan to reside with his step-sister.

603(b) of the First Step Act. That Order was supplemented by Administrative Order 20-8, which established procedures to address motions brought on grounds related to the COVID-19 pandemic. Under that Order, the FPD must notify the Court within fifteen days of filing of any *pro se* compassionate release motion whether it intends to enter an appearance on behalf of the defendant or seek additional time to make such a determination. The FPD entered its appearance on June 5, 2020 and filed supplemental materials to Parada's *pro se* motion on July 10 and July 24, 2020.

## II. Legal Standards

"[I]t is well-settled that '[a] district court is authorized to modify a [d]efendant's sentence only in specified instances where Congress has expressly granted the court jurisdiction to do so.'"[16] Section 3582(c) permits a court to modify a term of imprisonment for compassionate release only if certain exceptions apply. Until recently, these exceptions required the BOP to move on a defendant's behalf. In 2018, however, the FSA modified the compassionate release statute, permitting a defendant to bring his own motion for relief.[17] Since then, a defendant may bring a motion for compassionate release from custody only if he "has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on [his] behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier."[18] Unless a defendant meets this exhaustion requirement, the court lacks jurisdiction to modify the sentence or grant relief.[19]

---

[16] *United States v. White*, 765 F.3d 1240, 1244 (10th Cir. 2014) (quoting *United States v. Blackwell,* 81 F.3d 945, 947 (10th Cir. 1996)).

[17] First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194 (2018).

[18] 18 U.S.C. § 3582(c)(1)(A).

[19] *United States v. Johnson*, 766 F. App'x 648, 650 (10th Cir. 2019) (holding that without an express statutory authorization, a court lacks jurisdiction to modify a sentence).

Where a defendant has satisfied the exhaustion requirement, a court may reduce the defendant's sentence, after considering the factors set forth in 18 U.S.C. § 3553(a) to the extent they are applicable, if the court determines: (1) "extraordinary and compelling reasons warrant such a reduction"; or (2) "the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c) . . . and a determination has been made by the Director of the [BOP] that the defendant is not a danger to the safety of any other person or the community."[20]  In addition, a court must ensure that any reduction in a defendant's sentence under this statute is "consistent with applicable policy statements issued by the Sentencing Commission."[21]

The FSA does not itself define what constitutes "extraordinary and compelling reasons" to justify a reduction in sentence.  28 U.S.C. § 994(t) provides that "[t]he [Sentencing] Commission, in promulgating general policy statements regarding the sentencing modification provisions in section 3582(c)(a)(A) of title 18, shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criterial to be applied and a list of specific examples."  That policy statement is found at U.S.S.G. § 1B1.13.

The Sentencing Commission's comments to § 1B1.13 set forth four circumstances under which extraordinary and compelling reasons may exist: (1) the defendant is suffering from a terminal illness, i.e., a serious, advanced illness with an end-of-life trajectory; (2) the defendant is suffering from a serious physical or medical condition, serious functional or cognitive impairment, or deteriorating physical or mental health because of the aging process that

---

[20]18 U.S.C. § 3582(c)(1)(A).

[21]*Id.*; *see also Dillon v. United States*, 560 U.S. 817, 819 (2010) (holding the Sentencing Commission policy statement regarding 18 U.S.C. § 3582(c)(2) remains mandatory in the wake of *United States v. Booker*, 543 U.S. 220 (2005)).

substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which the defendant is not expected to recover; (3) the defendant is at least 65 years old, is experiencing a serious deterioration in physical or mental health because of the aging process, and has served at least ten years or seventy-five percent of the term of imprisonment, whichever is less; and (4) the defendant needs to serve as a caregiver for a minor child, spouse, or registered partner.[22]

Section 1B1.13 also includes a so-called "catchall" provision, which provides that extraordinary and compelling reasons "other than, or in combination with," the four listed may be sufficient to warrant relief, as determined by the Director of the BOP.[23]  The BOP has published a Program Statement identifying "several nonexclusive factors to determine whether 'other' extraordinary and compelling reasons exist:  the defendant's criminal and personal history, nature of his offense, disciplinary infractions, length of sentence and amount of time served, current age and time of offense and sentencing, release plans, and '[w]hether release would minimize the severity of the offense.'"[24]  As a "permissible construction of the statute," the BOP's Program Statement is "entitled to some deference."[25]

The Department of Justice ("DOJ") has recognized the unique risks posed to inmates and BOP employees from COVID-19.  The DOJ recently adopted the position that an inmate who presents with one of the risk factors identified by the Centers for Disease Control and Prevention

---

[22]U.S. Sentencing Guidelines Manual § 1B1.13 cmt. n.1 (A) through (C) (U.S. Sentencing Comm'n 2018).

[23]*Id.*

[24]*United States v. Saldana*, ---F. App'x---, 2020 WL 1486892, at *2 (quoting BOP Program Statement 5050.50 at 12 (2019)).

[25]*Id.* at *3 (citing *Reno v. Koray*, 515 U.S. 50, 61 (1995)).

("CDC") should be considered as having an "extraordinary and compelling reason" warranting a sentence reduction.[26]

On its face, the catchall category applies only if the Director of the BOP seeks compassionate release on a defendant's behalf.[27] However, this policy statement has not been updated to account for the changes to § 3582(c)(1)(A) enacted through the FSA and is thus "now clearly outdated."[28] The Sentencing Commission, currently lacking a quorum, has not updated § 1B1.13 since Congress amended § 3582(c)(1)(A). The policy statement still contemplates a motion for compassionate release originating solely from the BOP Director, which is clearly no longer the case. As this Court has previously determined, in accordance with the weight of authority, the Court is not limited to circumstances (A) through (C), and it may exercise its own discretion to determine whether other extraordinary and compelling reasons warrant relief under the statute.[29] Although the Guideline provides helpful guidance on what constitutes extraordinary and compelling reasons, it is not conclusive given the recent statutory changes.

## III. Discussion

### A. Exhaustion

Parada submitted a written form to the Warden at FCI Lompoc on April 16, 2020,

---

[26]*See, e.g., United States v. Martin*, No. DKC 04-0235-5, 2020 WL 3447760, at *2 (D. Md. June 24, 2020); *see also* U.S. Sentencing Guidelines Manual § 1B1.13 cmt. n.1(A)(ii)(I) (U.S. Sentencing Comm'n 2018).

[27]U.S. Sentencing Guidelines Manual § 1B1.13 cmt. n.1(A)(ii)(I) (U.S. Sentencing Comm'n 2018).

[28]*United States v. Rodriguez*, No. 2:03-cr-00271-AB-1, 2020 WL 1627331, at *3 (E.D. Pa. Apr. 1, 2020).

[29]*United States v. Reece*, No. 16-20088-JAR, 2020 WL 3960436, at *3 (D. Kan. July 13, 2020); *United States v. Lavy*, No. 17-20033-JAR, 2020 WL 3218110, at *3 (D. Kan. June 15, 2020); *see also United States v. Younger*, No. 16-40012-02-DDC, 2020 WL 3429490, at *5 (D. Kan. June 23, 2020); *United States v. Jackson*, No. 08-20150-02-JWL, 2020 WL 2812764, at *3 (D. Kan. May 29, 2020); *United States v. Perez*, No. 88-10094-JTM, 2020 WL 1180719, at *2–3 (D. Kan. Mar. 11, 2020); *United States v. O'Bryan*, No. 96-10076-JTM, 2020 WL 869475, at *2 (D. Kan. Feb. 21, 2020); *United States v. Somerville*, No. 2:12-CR-225-NR, 2020 WL 2781585, at *6 (W.D. Pa. May 29, 2020) (quoting *Rodriguez*, 2020 WL 1627331, at *3–4) (collecting cases).

"seeking relief pursuant to the CARES Act."[30]  His request stated he is a non-violent drug offender in his eighteenth year in custody and would reside with his step sister and her family if released.  He also noted he is a "Care Level 2" because of some of his medical issues and authorized staff to review his medical records in evaluating his request.  To close, Parada reiterated that he is "seeking relief pursuant to the CARE ACT 2020."[31]  Because more than thirty days have passed since he issued this request with a response from the warden, Parada argues he has satisfied the exhaustion requirement in § 3582(c).

The government contends Parada has not exhausted his administrative remedies because the grounds identified in his request to the warden do not mirror the grounds on which he now seeks compassionate release.  The government asserts that Parada must seek compassionate release from the warden based on COVID-19 and more explicitly describe his medical risk factors in order to satisfy the exhaustion mandate of § 3582(c).  In so doing, the government is raising what is often referred to as "issue exhaustion."[32]  According to the government's position, courts may only consider compassionate release motions where the defendant exhausted each basis for relief.  The Court disagrees.

The Supreme Court has emphasized that "requirements of administrative issue exhaustion are largely creatures of statute,"[33] and the statutory interpretation begins with the underlying text.  The compassionate release statute makes no indication that issue exhaustion is required, instead only mandating a defendant "fully exhaust[ ] all administrative rights to appeal a failure of the

---

[30]Doc. 436-3 at 1.

[31]*Id.* (errors in original).

[32]*Sims v. Apfel*, 530 U.S. 103, 107 (2000).  The underlying concept is also referred to as "administrative waiver" or "issue waiver," based on the notion that an issue not raised in such an administrative proceeding has been "waived."  *See generally Advocates for Highway & Auto Safety v. Fed. Motor Carrier Safety Admin.*, 429 F.3d 1136, 1148 (D.C. Cir. 2005).

[33]*Sims*, 530 U.S. at 107.

[BOP] to bring the motion on the defendant's behalf" or for thirty days to pass after "the receipt of such a request by the warden of the defendant's facility."[34]  The statute makes no mention of specific arguments or claims being raised prior to those claims being presented to a court.

Even where the underlying statute does not mandate issue exhaustion, "it is common for an agency's regulations to require issue exhaustion in administrative appeals."[35]  But the relevant Sentencing Guideline, § 1B1.13, has not been amended since the enactment of the First Step Act, which expanded the availability of compassionate release by permitting defendants to seek relief upon their own motions.  As noted, the BOP has not updated its own regulations governing compassionate release since the enactment of the FSA.[36]  In short, no regulation addresses whether issue exhaustion is required for compassionate release motions.

The Court recognizes that courts "have imposed an issue-exhaustion requirement even in the absence of a statute or regulation."[37]  "The basis for a judicially imposed issue-exhaustion requirement is an analogy to the rule that appellate courts will not consider arguments not raised before trial courts."[38]  Thus, as the Supreme Court explains, courts should determine whether to impose an issue exhaustion requirement based "on the degree to which analogy to normal adversarial litigation applies in a particular administrative proceeding."[39]

In the context of compassionate release motions, the nature of the underlying administrative proceeding counsels against requiring issue exhaustion.  Once an inmate has made requested compassionate release with the warden of his or her facility, the warden investigates

---

[34] 18 U.S.C. § 3582(c)(1)(A).

[35] *Sims*, 530 U.S. at 108.

[36] *See* 28 C.F.R. §§ 571.60–.64.

[37] *Sims*, 530 U.S. at 108.

[38] *Id.* at 108–09.

[39] *Id.* at 109.

9

and evaluates the request.[40]  If, at the conclusion of the investigation, the warden determines the inmate's request warrants approval, the warden then refers the matter to the Office of General Counsel.[41]  If the General Counsel agrees with the warden's conclusion, the General Counsel must "solicit the opinion of either the Medical Director or the Assistant Director, Correctional Programs Division depending on the nature of the basis of the request," and "the opinion of the United States Attorney in the district in which the inmate was sentenced."[42]  Notably, multiple BOP officials evaluate the merit of the inmate's compassionate release request with little to no involvement from the inmate; nor is there a requirement that a BOP representative be assigned to oppose the inmate's request.

The Court therefore finds the administrative process for compassionate release motions to be "inquisitorial rather than adversarial," undermining the government's argument for a judicially-imposed issue exhaustion requirement.[43]  Considering the BOP's expertise in evaluating: (1) inmates' conditions; (2) the risk posed to the public if an inmate is released; and (3) the adequacy of the inmate's release plan, it is clear that the BOP "does not depend much, if at all, on claimants to identify issues for review."[44]  Accordingly, the BOP's process of reviewing compassionate release requests leads the Court to conclude that "a judicially created issue-exhaustion requirement is inappropriate."[45]  As such, Parada's April 16 letter to the warden

---

[40]28 C.F.R. § 571.62(a)(1).

[41]*Id.*

[42]28 C.F.R. § 571.62(a)(2).

[43]*Sims v. United States*, 530 U.S. 103, 111 (2000).

[44]*Id.* at 112; *see also United States v. Scparta*, No. 18-CR-578 (AJN), 2020 WL 1910481, at *7 (S.D.N.Y. Apr. 19, 2020).

[45]*Sims*, 530 at 111.

satisfies the exhaustion requirement, and the Court has jurisdiction to decide Parada's motion based on all grounds presented therein.[46]

## B. Extraordinary and Compelling Circumstances

Parada argues that the existing COVID-19 pandemic and his medical conditions constitute an extraordinary, compelling reason to grant compassionate release. Parada also identifies FCI Lompoc's failure to provide adequate medical care to inmates infected with COVID-19 and otherwise provide a safe environment to mitigate the spread of COVID-19. Parada tested positive for the virus on May 8, 2020, and although he has not submitted medical records regarding his care, he reports suffering "kidney pain, chest pain, shortness of breath" and losing his sense of "smell and taste."[47] Parada also reportedly told counsel that his migraines have become more severe since contracting COVID-19.

Based on the evidence presented in Parada's motion, the government concedes that Parada "arguably presents a case that can establish an extraordinary and compelling medical situation."[48] In so concluding, the government notes Parada suffers from stage-2 kidney disease that has not yet required dialysis, intestinal and bladder issues, migraines, PTSD, and blindness in one eye. These pre-existing medical conditions, in combination with his positive COVID-19 test, establish extraordinary, compelling circumstances.[49]

---

[46]*See United States v. Boyles*, No. 18-20092-JAR, 2020 WL 1819887, at *2 (D. Kan. Apr. 10, 2020) (holding that if a criminal defendant fails to meet the First Step Act's exhaustion requirement, the Court lacks jurisdiction over the motion).

[47]Doc. 436 at 5.

[48]Doc. 440 at 21. The Court also notes Parada's efforts at rehabilitation while incarcerated, including completion of a career readiness program and a reentry program, as well as publication of a book about his life experiences. Doc. 441-3.

[49]Here, the Court notes that the parties disagree about the extent to which the virus has impacted Parada's health. The government maintains Parada's medical records suggest he has remained asymptomatic since his diagnosis; however, the FPD represents Parada has informed her he is symptomatic but does not report any severe illness from nor serious medical complications related to COVID-19 in the weeks since his test results came back.

### C.     Section 3553(a) Factors

Without question, it is regrettable that Parada contracted the COVID-19 virus while designated to a BOP facility hit hard by the pandemic.  The Court is not convinced, however, that the conditions he finds himself in qualify him for release after serving roughly three-fourths of his sentence.  To the extent that Parada's medical circumstances arguably meet the "extraordinary and compelling" standard, satisfying that burden does not resolve the issue of his entitlement to a reduction in sentence or release from confinement.  The Court must still consider (1) the defendant's personal history and characteristics; (2) his sentence relative to the nature and seriousness of his offenses; (3) the need for a sentence to provide just punishment, promote respect for the law, reflect the seriousness of the offense, deter crime, and protect the public; (4) the need for rehabilitative services; (5) the applicable guideline sentence; and (6) the need to avoid unwarranted sentence disparities among similarly-situated defendants.[50]

Application of the § 3553(a) factors here strongly militates against reducing Parada's sentence to time-served.  Parada was convicted of two felony offenses for possessing and conspiring to distribute approximately 340 grams of PCP.[51]  Parada's Presentence Investigation Report ("PSIR") documents a robust history of criminal conduct including theft, document fraud, failure to appear for court, and involvement with controlled substances.[52]  In addition, this offense was committed while on probation for possession of cocaine in California, and less than two years after Parada's release from custody for unauthorized use of a motor vehicle, resulting

---

Because neither party submits medical records in support of its conclusion, the Court does not rely on the impact of the virus on Parada's health in making its determination.

[50] *See* 18 U.S.C. § 3553(a)(1)-(6).

[51] PSIR ¶ 19.

[52] *Id.* ¶¶ 35–50.

in a substantial criminal history category VI classification.[53] His past patterns of criminal history reveal a need for a sentence to reflect the seriousness of his conduct and promote respect for the law.

Of particular concern to the Court is Parada's history of using multiple identities, including through fabricated government documents, making it difficult to verify his true identity, citizenship, or otherwise verify his location at any given time. Parada has a history of using false identifications and was given a 2-level enhancement in this case when he made materially false representations to the United States Probation Office ("USPO") about his true identity.[54] The USPO has informed the Court that to date, Parada's identity remains unconfirmed. Thus, there remain serious questions about Parada's identity and citizenship— until he can himself establish that he is in fact Norman Parada and that he is a United States citizen, reduction of his sentence to time-served would run counter to the need to promote respect for the law and protect the public.[55]

Parada initially received a 405-month sentence, which was subsequently reduced to 327 months. Reducing his current sentence by approximately one-fourth would produce a sentence that no longer reflects the seriousness of Parada's criminal conduct, nor furnishes adequate deterrence to criminal conduct or provides just punishment. When the Court modified Parada's sentence to a term of 327-months' imprisonment, it adhered to the statutory mandate to impose a sentence "not greater than necessary."[56] Reducing Parada's sentence to the approximately 206

---

[53]*Id.* ¶ 54.

[54]*Id.* ¶¶ 29, 48–50.

[55]The Court acknowledges that citizenship is not a requirement for compassionate release. If Parada is not a United States citizen, however, he may be subject to deportation and any release would have to be to the custody of Immigration and Customs Enforcement, not to reside with his step-sister. *See, e.g. United States v. Aguilar*, No. 02-cr-40035-JAR (D. Kan. Aug. 3, 2020).

[56]18 U.S.C. § 3553(a).

months he has served would fall well below the applicable Guidelines range of 262 to 327 months.[57] No new facts justify such a substantial disparity. The pertinent sentencing factors in § 3553(a) do not favor the reduction Parada seeks and his motion is therefore denied.[58]

**IT IS THEREFORE ORDERED BY THE COURT** that Defendant Norman A. Parada's Motion for Compassionate Release (Doc. 436) is **denied**.

**IT IS SO ORDERED.**

Dated: August 10, 2020

> S/ Julie A. Robinson
> JULIE A. ROBINSON
> CHIEF UNITED STATES DISTRICT JUDGE

---

[57] Doc. 422.

[58] *See United States v. Pawlowski*, ---F. App'x---, 2020 WL 3483740, at *2 (3d Cir. June 26, 2020) (holding district court did not abuse its discretion denying motion for compassionate release based on the amount of time remaining to be served; decision not to reduce defendant's sentence from 15 years to less than two years was not unreasonable after consideration of several of the § 3553(a) factors) (citing cases).